[See Case No. 6,005.]

---

## Case No. 6,081.

### The HARMONY.

[1 Gall. 123.] [1]

Circuit Court, D. Massachusetts. May Term, 1812.

#### UNLOADING GOODS WITHOUT A PERMIT—FORFEITURE OF VESSEL—PRACTICE.

1. Under the 50th section of the act of March 2, 1799, c. 128 (4 U. S. Laws [by Folwell] 279; [1 Stat. 665, c. 22]), if foreign goods exceeding $400 in value are unladen without a permit, &c. the vessel is forfeited from which they are unladen, although they were not actually brought in such vessel from a foreign port; but had been trans-shipped into her on the homeward voyage.

[Cited in U. S. v. The Virgin, Case No. 16,-625: The Industry, Id. 7,028; Jackson v. U. S., Id. 7,140; U. S. v. 129 Packages, Id. 15,941: The Active, Id. 33; The Sarah Bernice. Id. 12,343; The Saratoga, 9 Fed. 328; U. S. v. Curtis, 16 Fed. 186.]

2. Amendment by inserting a new substantive offence disallowed; the statute of limitations having run against it.

See Dunl. Adm. Prac. c. 18. See Cross v. U. S. [Case No. 3,434]; The Edward, 1 Wheat. [14 U. S.] 261; U. S. v. Four Part Pieces of Woolen Cloth [Case No. 15,150.]

[Cited in Anonymous, Case No. 444; Tyson v. Belmont, Id. 14,315a; Tiernan v. Woodruff, Id. 14,027; Newell v. Norton, 3 Wall. (70 U. S.) 266; The Favorite, Case No. 4,696. Applied in U. S. v. 123 Casks of Distilled Spirits, Id. 15,943. Cited in Reed v. Crowley, Id. 11,644; The Maggie Jones, Id. 8,-947; U. S. v. Mosely, 8 Fed. 690; The Corozal, 19 Fed. 655; The George Taulane, 22 Fed. 800; Dieckerhoff v. Robertson, 29 Fed. 782.]

---

[1] [Reported by John Gallison, Esq.]

[Appeal from the district court of the United States for the district of Massachusetts.

[This was a libel by the United States against the schooner Harmony, Paoli Hewes, claimant, for unloading goods without a permit.]

G. Blake, for the United States.
S. Dexter, for claimant.

STORY, Circuit Justice. The libel is founded on the 50th section of the collection act of 2d March, 1799, c. 128 (4 U. S. Laws [by Folwell] 279; [1 Stat. 665, c. 22]), for unloading goods without a permit at Boston. The attorney for the United States moves for leave to amend, and to insert a new count, founded on the 28th section of the same act, for receiving on board, from another vessel, certain foreign goods and merchandize in the Bay of Passamaquoddy. It is stated, that this latter transaction has now, for the first time, come to the knowledge of the district attorney; that it took place more than three years ago, and of course the forfeiture would be barred by the statute of limitations; and that the transaction had no immediate connexion with the offence, for which the original seizure was made at Boston.

The amendment has been opposed on several grounds:

1. That it would be introductive of a new cause of action, which is not allowable. On examination, I do not find that this has, even at common law, been considered as of itself a sufficient objection. 2 Tidd, Pr. 643, 644; 2 Strange, 890; 1 Wils. 149. Though it appears, that amendments in such cases have been granted only under particular circumstances. Sackett v. Thompson, 2 Johns. 206; Harris v. Wadsworth, 3 Johns. 257. In revenue informations, such amendments were formerly denied (Edgell v. Decker, Bunb. 252); but latterly they seem to have been generally allowed, as the attorney general might obtain the same effect by a new information (Attorney General v. Henderson, 3 Anstr. 714). In admiralty and maritime causes, to which class the present belongs, such amendments are within the scope of the general rule, that you may allege new allegations in the appellate court. Cler. Prax. tit. 54.

2. It has been further objected, that such amendments ought not to be allowed, because the statute of limitations has actually run against the forfeiture; and it would be in effect reviving a new right of action, which in an original information would be barred. That the statute of limitations would run against a cause of action then before the court, has been held a good reason for allowing an amendment, as to such cause of action. 2 Tidd, Prac. 643, 644; 1 Wils. 144; Sayer, 235; Cross v. Kaye, 6 Term R. 543; Maddock v. Hammet, 7 Term R. 55. But in such cases, the court will not admit an amendment, if it be to introduce a new substantive cause of action, or new charge against the defendant. Id.; Petre v. Craft, 4 East, 433. Now I think this rule a perfectly reasonable one, and I shall adhere to it in this case. The amendment must be disallowed, because the cause of action would be gone on an original information; and it is clearly a new substantive charge. I will only add, that a third objection made, that it might affect the rights of the sureties on the bond given for the property, has not been considered of weight in any cases at common law. Where the property is delivered on bond, it is too much to contend, that the rights of the court over it can be increased or diminished by that circumstance. Every person, so bailing the property, is considered as holding it subject to all legal dispositions by the court. Rex v. Holland, 4 Term R. 457. A fortiori the objection would, with great difficulty, find support in a court exercising admiralty jurisdiction. Motion denied.

On a hearing of the cause on the merits, STORY, Circuit Justice, delivered the following opinion:

The schooner Harmony has been libelled for landing foreign goods and merchandize, exceeding $400 in value, in the port of Boston without a permit, and in the night-time, contrary to the 50th section of the revenue act of 2d March, 1799, c. 128 (4 U. S. Laws, 360) [1 Stat. 665, c. 22]. It is admitted, that the facts primâ facie support this allegation, and the defence relied on is, that these goods and merchandize were not brought in said schooner from a foreign port or place, but were taken out of a British vessel in Passamaquoddy Bay, within the limits of the United States, and there immediately put on board of the Harmony; and it is contended, that the 50th section of the act referred to, applies only to vessels which have actually brought the goods and merchandize from a foreign port or place, and not to goods and merchandize, which have been shipped within our waters. It is admitted, that the transshipment in Passamaquoddy Bay, if sufficiently proved, was a violation of the 27th and 28th sections of the same act, and an inference is thence drawn, that the 50th section ought not to be applied to the case. There can be no doubt, that the vessel was forfeited under the 28th section; but as there is no count in the libel founded thereon, the forfeiture cannot be decreed for that cause. The words of the 50th section are, "that no goods, wares or merchandize, brought in any ship or vessel from any foreign port or place, shall be unladen or delivered from such ship or vessel within the United States, but in open day, &c., nor at any time, without a permit," on penalty of forfeiture; and if they are so unladen, and the value exceed $400, the act declares, that the vessel shall be subject to the like forfeiture. The argument is, that the vessel so declared to be forfeited, is the vessel, which shall bring the goods from

a foreign port or place, and none other; and that these words are a description or designation of the vessel forfeited, and not of the goods.

Perhaps, in strict grammatical construction, this is the more natural import of the clause; but without any violation of propriety, the language may also be applied to the goods. It would in this view read in effect thus, "No goods, wares, or merchandize, brought from any foreign port or place, in (that is, on board of) any ship or vessel shall be unladen or delivered, &c., without a permit." If it be urged, that this is an unauthorised transposition of the words, and gives them a construction the reverse of their literal signification, I might answer in the words of Lord Coke, "Qui haeret in litera, haeret in cortice." But it is not necessary to resort to this maxim. In the construction of all statutes, it is a general rule, that the court are to expound them according to the intention of the framers. This intention is to be gathered, not merely from an examination of a single section, but from comparing together different sections of the same statute. When it is once ascertained that the legislature have created an offence, the extent, to which it reaches, is to be sought in the exposition of the mischiefs which it seeks to remedy, and cases within the same mischief and the same intent have been frequently construed within the prohibitions, although not exactly within the letter. 2 Rolle, 318; Plowd. 350, 363; 3 Atk. 203; Com. Dig. "Parliament," R, 10, 13, 15, 19. From the operation of this rule, penal statutes do not seem always to be exempted. Plowd. 10; Hardr. 208; Plowd. 82. For though they are to be construed strictly, yet they are to be so construed, as to meet the mischief, which the legislature show a clear determination to suppress.

Let us now examine with this view the act before us. It will be admitted, that its obvious intent was, to regulate all trade in merchandize brought from foreign ports, and to guard the revenue of the United States from frauds. The duties which are payable on foreign commodities are exacted by other laws; but the mode of collection, and the regulations of importation are in a great measure confined to this act. The sections of the act from the 23d, up to the 50th section, contain a series of provisions evidently intended to prevent the importation of all goods, foreign as well as domestic (sections 47, 48), from any foreign country, without the same being put under the inspection of the proper revenue officers. The fact of their having come from a foreign country, and not the conveyance, by which they come, is that which gives the right to duties; and it is the security of the latter, which has engaged the solicitude of the legislature.

Now it has been supposed, that the 27th and 28th sections apply to trans-shipments within four leagues of the coast, or within

some district of the United States, before the arrival of the vessel at a port of delivery, and to this construction the court was inclined, from the manifest intention of the legislature resulting from provisions applicable to the progressive order of the voyage. If that opinion be right, and a foreign cargo be brought into a port of delivery in the United States, as for instance into the Vineyard, and thence trans-shipped in another vessel to another port of delivery in the United States, without payment of duties, and landed in the latter port without a permit, it would follow upon the argument of the claimant's counsel that neither the goods nor vessel would be forfeited by the 50th section. Not the goods, for they would not then be brought from a foreign port in the ship; nor the ship, for she would not have come from a foreign port. Now such a construction would be manifestly against the whole scope of the act. It would destroy, by an intermediate trans-shipment, the whole security of the revenue. Precisely the same words are used in the same connexion in the 51st section, and all the regulations prescribed by that section, as to weighing and gauging, and the removal of goods landed on a wharf, would be inapplicable to goods so intermediately trans-shipped. It has indeed been suggested, that this section applies to any foreign goods in any ship or vessel whatsoever, and is not confined to the ship or vessel bringing them from a foreign port. But I cannot feel the distinction. The words are the same, and if the 51st section had at the close contained a forfeiture of the vessel, as it does of the goods, I imagine the construction of both sections must have been the same; and if so, have I not a right to say, that in the 50th section, the words apply to any foreign goods imported in any vessel from any port whatsoever? Further, it is one great object of the legislature, to make the owner of the ship a surety for the fair and upright conduct of the owner of the cargo. Without the connivance of the master, goods to the amount of $400 can hardly be smuggled from the ship. The master has the confidence of the owner, and is responsible to him for his own acts. This strong inducement to watchfulness, to integrity, and prompt interdiction of illegal traffic, would be wholly lost upon the supposed construction of the act in a variety of cases. When I can perceive a construction, which hardly varies the letter of the act, and yet comports with its general intent, which suppresses the mischiefs and enforces the purposes of the general policy, I cannot think that any rule respecting penal statutes is violated by deciding that the present case is within the purview of the 50th section.

After the decisions of the court in the cases of The Hannah [Case No. 6,028], and The Industry [Id. 7,028], at this term, it seemed difficult to avoid this conclusion. But entertaining, as I do, the most entire respect for the learned counsel for the claimant, I can never deem that of light or trivial consideration,

which he shall choose to urge to the court; and if he has failed to satisfy my doubts, it cannot be, that his arguments have wanted either exactness or perspicacity. I affirm the decree of the district court, with costs.