## Case No. 10,583.

### ORNE v. TOWNSEND.

[4 Mason, 541.] [1]

Circuit Court, D. Massachusetts. Oct. Term. 1827.

PLEADING IN ADMIRALTY—CERTAINTY AND ACCURACY OF LIBEL FOR WAGES — FORFEITURE—DESERTION — DISPROVAL OF LOG BOOK — MISCONDUCT—DISCHARGE IN FOREIGN PORT—ONUS PROBANDI.

1. In a libel for wages. the allegations of the hiring. voyage, &c.. should be drawn accurately and with reasonable certainty, otherwise it may be excepted to. The most correct course is. to state the facts, &c.. in distinct articles, which is the usual course in admiralty proceedings.

[Cited in Pettingill v. Dinsmore, Case No. 11,-045; New Jersey Steam Nav. Co. v. Merchant's Bank, 6 How. (47 U. S.) 434.]

2. No facts of misbehavior. or other cause of forfeiture of wages, are admissible at the hearing, unless the answer distinctly propounds them, and puts them in issue.

[Cited in The Elizabeth Frith, Case No. 4,361.]

3. If the log book states a desertion, it may be repelled by proof of the falsity of the entry, or its being made by mistake.

[Cited in The Sarah Jane, Case No. 12.348.]

4. Habitual drunkenness, if it goes to establish general incapacity to perform duty. is a ground of forfeiture of wages; otherwise it goes only to diminish compensation for the voyage.

[Cited in Smith v. Treat. Case No. 13.117; The Cornelia Amsden, Id. 3,234.]

5. But no fact of this nature is examinable at the hearing, unless averred and put in issue by the owner.

---

[1] [Reported by William P. Mason, Esq.]

6. Where misconduct is relied on to defeat the claim of wages it should be stated, with reasonable certainty as to time, place, circumstances, and degree.

7. A refusal to do duty, at a moment of high excitement from punishment inflicted on the party, if not followed by obstinate perseverance, is not a forfeiture of wages.

8. The mate is entitled to command in the absence of the master, and if a seaman be wrongfully dismissed by him, the owners are liable therefor, as the act of their agent.

9. Under what circumstances a dismissal of a seaman from duty may be justifiable.

[Cited in Smith v. Treat, Case No. 13,117; The Cornelia Amsden, Id. 3,234.]

10. Where an American seaman is discharged by the master in a foreign port, he may recover, in a libel for wages, the three months' advance, authorized by the act of congress of 1803, c. 62 [2 Story's Laws, 883; 2 Stat. 203, c. 9], if the same be not paid to the consul abroad, to be distributed according to the act.

[Cited in Wells v. Meldrum, Case No. 17,402; Pratt v. Thomas, Id. 11,377; Dustin v. Murray, Id. 4,201.]

[Cited in Wilson v. Borstel, 73 Me. 275.]

11. The onus probandi is on the master to show, that the advance was paid.

12. It is no objection to the recovery of the three months' advance, that the name of the seaman is omitted as an American citizen, in the list of the crew, certified from the collector's office, under the act of 1796, c. 36, § 4 [1 Stat. 477], if he is named as an American citizen on the master's list of the crew.

[Appeal from the district court of the United States for the district of Massachusetts.]

This was an appeal from the sentence of the district court, in a case for mariner's wages. The suit was brought by a libel in personam against the appellant [Joshua Orne], who was master of the ship. The allegations of the libel state, that the libellant [Jacob Townsend], on or about the first day of February last, shipped on board the ship Aeronaut, then lying at Boston, as steward, on a voyage from thence to the West Indies, and thence to Europe, and thence back again to Boston, at the rate of thirteen dollars wages per month; that he sailed on the voyage; that the ship first went to Havana, and from thence to Matanzas, and from thence to Hamburg, where about the 28th of June last he was discharged, and turned on shore, without his wages being paid, or the three months' advance wages, required by law, being paid to the American consul at that port; that he was sent home by the consul in another ship; and that the Aeronaut has since returned home. The grievance alleged is, that the master still refuses to pay the wages and advance. And to obtain these is the object of the suit.

Mr. Dunlap, for libellant.
Orne & Jarvis, for respondent.

STORY, Circuit Justice (after stating the facts). The description of the voyage, in the shipping paper, differs in terms, though not in substance, from that in the libel. But there is no dispute between the parties, that the actual voyage was performed in the manner stated in the libel, and that the rate of wages, and time of shipment, are truly stated. The defence turns upon other considerations, to which I shall immediately advert. I wish, however, to state a few words on the proper form of the libel and answer, in cases of this nature, since they are often drawn with too little precision and accuracy to put the points neatly, or clearly, before the court. The true course, even in the case of a summary petition, like the present, and a fortiori in formal proceedings, is to allege the material facts in distinct articles in the libel, with as much exactness and attention to times and circumstances, as in a formal declaration at law. If the state of the evidence should require, in a later stage of the proceedings, some amendments to avoid a variance, leave may generally be obtained, upon a timely application, to reform the libel accordingly. The answer should, in like manner, distinctly admit, or deny, facts stated in the different articles; for it is otherwise open to exceptions for incompleteness or inaccuracy; and if it rely upon any new matter by way of defence, that matter should be stated with clearness and certainty, so that the points at issue between the parties may be immediately seen. Now, both the libel and answer, in this case, are open to observation from their deficiency in some of these particulars. I impute not the slightest blame to the learned counsel engaged in this cause, for these irregularities; because I am sensible they find an ample apology in the practice, which has so long prevailed in this district as almost to give them a sanction, and which the comity of the bar, and the general indulgence of the court, has hitherto not made it very important to bring back to the true principles of admiralty pleadings. But the learned counsel, from their own experience, must be as sensible as the court, of the advantages of a strict and accurate practice; and I trust it is not too much to ask their future assistance, to aid the court in overcoming the present inconveniences. I might illustrate these remarks by adverting to the fact, that the answer puts in issue the citizenship of the libellant, though it is nowhere asserted in the libel, and is certainly material to establish the right of the three months' advance wages, which are payable by law to the consul upon a discharge of seamen in a foreign port. On the other hand, the answer does not either admit or deny the time of shipment, the rate of wages, the performance of the voyage, or the return of the ship home, as alleged in the libel. It seems to rely upon the desertion of the libellant at Hamburg, as a defence; and yet the fact is not directly, or even by necessary implication, averred; and if relied on, it ought to have been set forth with all due form of time, and place, and circumstances. It further sets up disobedience of orders, and refusal to do duty, as a defence; and yet neither of these facts is stated except in a

very general form, without any accompaniments of time, or place, or occasion. Yet these, if not of the essence of the allegations, are of great importance, by enabling the parties to point their evidence, and the court to weigh the extent of the offence, and the sufficiency of the proofs.

The defence, so far as the answer relies upon the fact of desertion, has been abandoned at the argument, and with great propriety. It is not so stated in the pleadings, as to be made available in point of law; and if it were otherwise, it is not established in evidence. It is true, that the mate, on the 11th of June, made an entry in the log book, that the steward had deserted. But if this entry were, in any just sense, true at the time it was made, of which some doubts might, upon the evidence, occur to any mind of ordinary candour; still it is perfectly clear, that there was in fact no desertion; but a compulsive absence from the ship, occasioned by an arrest of the local police, winked at, even if it was not procured, by the instigation of that officer. The master indeed incurred no blame, for he was absent from the ship at the period, and seems not to have been put in possession of the proper information. But it was certainly the duty of the mate to have corrected his original entry, from his subsequent knowledge of the actual cause of the steward's absence, and not to have left the most offensive construction to be put upon it, even to the extent of a forfeiture of all the previously earned wages. The omission so to do, if it does not argue some disingenuousness, is matter of just reproof, as a gross omission of duty.

Another ground of defence, relied on at the argument, is the imputation of habitual drunkenness. This is a vice, which can never receive countenance from any maritime court, and is of such rankness and injurious tendency, both as to discipline and service on ship board, that it usually calls for the animadversion of the court, and not unfrequently is followed by punishment in the shape of diminished compensation and wages. Where it is habitual and gross, it may indeed be visited with a total forfeiture of wages; but where it is only occasional, or leaves much meritorious service behind, it is thought quite sufficient to recover, in damages, the amount of the actual or presumed loss, resulting from such a violation of the mariner's contract, and imperfect performance of duty. The maritime law is, in this, as in many other cases, founded on an indulgent consideration of human temptations and infirmities. It is not insensible to the perils and the hardships, the fatigues and the excitements, incident to the sea service; and it allows much for the habitual thoughtlessness, irregularity, and impetuosity, which, with much gallantry and humanity, is mixed up in the character of seamen. It deals out its forfeitures, therefore, with a sparing hand, and aims to arrive at just and equitable results, not by enforcing rigid and harsh rules, but by moderating compensation as well as punishment, so as to apportion each to the nature and extent of the offence. It has been truly said, that drunkenness, however reprehensible in a common mariner, is far more unjustifiable in a steward, who is placed in an office of considerable confidence and responsibility. The court ought to watch his case with a more scrupulous caution, than in ordinary cases. But there must be in his case, as well as in that of others, some allowance made for occasional impropriety; and the temptation to undue indulgence is felt much more, as an apology, in port, than at sea. The evidence, from the log book, exhibits but few instances of this sort, by the libellant, while at sea. Those which occurred were principally in port. But it cannot be disguised, that the evidence aliunde lays a pretty strong foundation for the belief, that in him it was an habitual and debasing propensity, though not to the extent of disabling him from his general duty on board. Under these circumstances it might have operated to diminish his compensation, if it had been put in issue by the answer. But not being relied on there, it is, in a legal sense, withdrawn from the consideration of the court. And for the same reason, the charge of embezzlement of the ship's small stores, may be passed over without further observation.

Another ground of defence, asserted in the answer, is, "that the said Townsend (the steward) was guilty of great misconduct, unfaithfulness, and disobedience, and that, a long time before his thus leaving the ship, he refused absolutely and altogether to perform any duty, and thereby compelled this respondent to procure another steward in said Townsend's place, and to order him forward to the forecastle." This is the whole charge, conceived in very general terms, and, with a single exception, pointing to no particulars. Such as it is, however, it is of a grave cast, and ought to be established in proof, before it can be successfully urged as a ground of judgment. Now, the proofs do not present any such general and sweeping defaults, even supposing, that any allegation, in such general terms, could be deemed to put the matter in issue. The whole stress of the evidence goes to a denial of duty on a single occasion; and we shall presently see, how far the circumstances justify such an inflamed statement. The facts are, that, on the 11th of June (the day already alluded to), the master was on shore, and the mate, being left in the sole command, undertook to flog the steward, with very considerable severity, on account of his being, at that time, negligent of his duty and intoxicated. In this state of things, the mate ordered him to go immediately to his duty, which the steward, then smarting under his recent flagellation, and the stupefying effects of liquor, refused, in the presence of the crew,

alleging the fact of punishment, as his excuse. The mate, nothing loath, caused him to be put immediately in irons, by way of increased punishment, and directed his clothes to be transferred from the cabin to the forecastle, assuming in this way the right to displace him. He was afterwards seen in the long boat, and was taken away by the police boat in the manner already adverted to, and detained three days. At the end of that time he returned on board again by order of the American consul. When the master came on board, the mate stated (as he deposes) the facts to him, and the master then said, the steward might remain on board, as he had been sent by the consul; but he should do no further duty on board, and should be separated from the rest of the crew. Under this order he remained on board for ten days without doing any duty, never having been required so to do. At the end of this period, and while the master was on shore, the steward obtained the leave of the mate to go on shore, and to leave no doubt, as to the mate's intentions, he was permitted to take his clothes, the mate delivered up to him his protection, and gave him the sum of three dollars. The brig sailed on her homeward voyage the next day, and no attempt was made by the steward to return on board, and the master made no inquiries for him on shore, there having been another steward engaged for the voyage in his stead.

Such is a brief outline of the material facts; and it is scarcely necessary to say, that it does not come up to the strong averments of the answer. The denial of duty, on the occasion alluded to, was under the pains of severe chastisement, and was followed up by more decisive punishment. To say the least of it, the steward returned on board for duty, as soon as he reasonably might, and his subsequent non-performance of duty was dispensed with in the most absolute manner. His repentance was signified by his return, and it was the duty of the master, under such circumstances, either to have received him on board to perform such duty as he might, or to have procured a discharge of him, under the sanction of the American consul. Neither course was adopted, and the master must now bear the legal consequences, arising from his listening, with too much confidence, to the suggestions of the mate. It is certainly not just to expect the court to inflict another punishment by a forfeiture of wages, for an offence already sufficiently punished by personal chastisement, following the very corpus delicti.

Then, it is said, that, here, there was no discharge of the steward, by the master. And the answer "denies, that he was ever discharged from said ship by this respondent, or by his orders or authority; but avers, that if he was discharged by any one. that it was against this respondent's express directions and orders." Now, assuming the fact to be so, it is difficult to see, how it can change the legal posture of the case. In the absence of the master, the mate is entrusted with the care of the ship, and the government and management of the crew. His acts, during this period, are considered as constructively the acts of the master pro hac vice. It may be very rash for him to exercise such an authority as a discharge of a refractory, or drunken seaman, and he may incur responsibleness, as well to his owners, as to the public, for such conduct. But I am not prepared to say, that he is absolutely incompetent to such a function. And cases may be put, such as cases of a mutiny, in which a strong necessity might arise for a peremptory exercise of such an authority. At all events, it is a sufficient excuse for the seaman, that he is so discharged, until a demand is made for his return on board, which cannot be pretended in this case. But there is not the slightest proof, that the master ever disapproved of the act of the mate. He did in effect discharge him from all duty, as steward. on board, during the ten days, and manifestly deemed him no longer one of the crew, but a mere disabled seaman, to be returned home under the authority of the consul, pursuant to the laws for the relief of distressed and destitute seamen in foreign countries. Act 1803, c. 62, § 4 [2 Story's Laws, 1883; 2 Stat. 203, c. 9]. Under such circumstances, it is difficult to say, that the steward was not, in a legal view, discharged by the master himself, at least so far as he was competent to do it without the consent of the former, and also of the consul. It appears to the court, therefore, that the discharge, such as it was, was sufficient to entitle the steward to his wages, and that his leaving the brig was not unjustifiable, or a cause of forfeiture.

Then, how stands the case as to the advance wages, consequent upon such a voluntary discharge. I need not say, that the law expects every court to guard, with a vigilant eye, any attempt to evade the salutary provisions for the protection of American seamen from improper discharges in foreign ports. A recent statute has punished, criminally, the malicious forcing of a seaman on shore in a foreign port. Act of 1825, c. 276, § 10 [3 Story, Laws, 2001; 4 Stat. 117, c. 65],—Ingersoll, Dig. (Ed. 1825) 511. Act 1803, c. 62, § 3 [c. 9], provides, that "when a seaman or mariner, a citizen of the United States. shall, with his own consent, be discharged in a foreign country, it shall be the duty of the master, &c., to produce to the consul, &c., the list of the ship's company, certified as aforesaid (i. e. by the collector), and to pay to such consul, &c., for every seaman or mariner so discharged, being designated on such list as a citizen of the United States. three months' pay over and above the wages. which may then be due to such seaman or mariner, two thirds

thereof to be paid by such consul, &c., to each seaman or mariner so discharged, upon his engagement on board of any vessel to return to the United States, and the other remaining third to be retained for the purpose of creating a fund for the payment of the passages of seamen or mariners, citizens of the United States, who may be desirous of returning to the United States, and for the maintenance of American seamen, who may be destitute, and may be in such foreign port." This court has repeatedly held, that if the three months' pay be not given to the consul, according to this provision, it is recoverable by the seaman in his libel, if he is brought within the purview of the act, two thirds for his own use, and the remaining third to be retained by the court for the use of the United States, and paid over accordingly. The act having given the sum as wages, it is recoverable as such; and thus a great source of vexatious evasion of duty is dried up.

Now, what are the objections to the recovery in the present case? First, it is said, here was no discharge. But that has been already sufficiently answered; and the discharge must be deemed to be by the consent of the steward. There is no pretence to say that the advance wages were paid to the consul. His certificate, given to the steward upon his return home in another ship, states the contrary; and if it were otherwise, the onus probandi lies on the master. Then it is said, that the steward is· not certified by the collector to be an American seaman, upon the custom-house documents. All that Act 1803, c. 62 [c. 9], requires, is, "that the master shall deliver to the collector a list, containing the names, places of birth and residence, and description of the persons who compose his ship's company, to which list the oath or affirmation of the captain shall be annexed, that the said list contains the names of his crew, together with the places of their birth and residence, as far as he can ascertain them, and the collector shall deliver him a certified copy thereof." This is the list, to which the third section of the act, already recited, refers; and upon the list of the crew of the Aeronaut, sworn to by the master, and certified by the collector, for this voyage, the steward's name is borne as a citizen of the United States, born at New York, and resident at Boston. It stands, then, within the strictest text of the act. The objection has its origin in another and distinct certificate on the back of the list, in which the collector certifies, that certain of the crew, naming them (but omitting the steward's name), have produced proof, that they are citizens of the United States. But this certificate is for another purpose, and is in conformity with Act 1796, c. 36, § 4, for the relief and protection of American seamen, which authorizes the collectors to grant certificates of citizenship upon due proofs before them. There are other acts,

and particularly Act 1813, c. 40 (184) [2 Story, Laws, 1302; 2 Stat. 809], which requires the approval of the collector of the list of the crew, and Act 1817, c. 28 (204) [3 Story, Laws, 1622; 3 Stat. 351], which, for certain purposes, requires two thirds and three fourths of the crews of ships to be citizens of the United States. It is sufficient to say, that these acts have not changed the legal construction of the terms of Act. 1783, c. 12, but are only cumulative for other purposes. It is sufficient, for the purposes of that act, that the discharged seaman is designated on the list as an American citizen, to entitle him to the advance. In the present case, the direct testimony of witnesses has established the truth of the description of the steward in the list of the crew. There is then no controversy, that he is really entitled to the protection of the act.

Upon the whole, my judgment is, that the decree of the district court ought to be·affirmed, and it is affirmed accordingly, with costs.