BIERNE & McMAHON v. THE STEAM BOAT TRIUMPH

1. The omission to issue or serve a writ of monition, in a suit commenced to enforce a lien against a Steam Boat, is not a sufficient cause, according to the course of admiralty practice, to dismiss the libel.

2. Where no monition is issued; or if one is issued, and its service is irregular or defective, it is entirely competent for the Court to make such order as will effectually protect the interests of those who are not before it.

3. In the absence of any rules of Court directing the practice, it is probable that the mere taking of the Steam Boat into the possession of the executive officer of the Court ought to be considered as notice to all the world; as the jurisdiction over the Boat commences with its seizure.

4. When a bond is taken by the sheriff, conditioned to detain the Steam Boat seized, if judgment of condemnation shall be given and execution issue, this is not a compliance with the statute; nor is the lien upon the Boat discharged. The Court may, notwithstanding, proceed to condemnation of the Boat, and order its sale.

Appeal from the Circuit Court of Sumter County, in a proceeding in the nature of admiralty.

LIBEL to enforce a lien on a Steam Boat under the act of 1836. [Aik. Dig., 2 Ed. 604.]

The libel was filed on the 20th February, 1838, and prays the condemnation of the Steam Boat for the value of certain goods shipped and not delivered.

A writ of seizure issued on the same day, and in this writ is the following clause :

"Whereof, you will given due monition to the claimants of said Steam Boat, &c., and others interested therein."

The sheriff returned, that he had seized the Steam Boat on the 7th day of March, 1838 ; and that he had the same to account for ; and gave public monition to all concerned by publication and notice in a gazette published in said county.

On the 14th December, 1839, a *dedimus* was sued out at the instance of one who states himself to be the attorney for the defendant, and describing the defendant as the Steam Boat Triumph. The cause was continued from term to term, until October term, 1840, when, on the motion of the plaintiff's attorney, the sheriff was permitted to amend his return by adding to it, that on the application of John Huddleston, claimant of the said Steam boat, her tackle, &c.; the sheriff permitted him to replevy the same out of the sheriff's possession, on his entering into bond, &c., which bond the sheriff returns, &c.

This bond does not pursue the statutory condition ; but instead of it, has the following :

"Now, if the said obligors shall, in case judgment shall be rendered at the suit of the said libellants in their said suit, produce to the said sheriff or his successors, at the port of Gainesville, where the said Boat now lies, on demand thereof by the said sheriff, his deputy, or successors having execution thereon against them, then the bond to be void, otherwise, &c."

This bond is payable to the sheriff, and by him is assigned to the libellants.

At the same term a judgment was entered in these terms: "This day came the said plaintiffs, and also came Steele & Metcalf, attorneys of this Court as *amici curiae*, who at a for-

mer term, entered their names on the margin of the docket of the Court as attorneys on the part of the defence; but who, now disclaim an appearance, and refuse to appear therein, or to interpose any plea on the part of the claimants of the said Boat, or other defendants, whereby the said libellants in their said libel remain wholly undefended; but the Court being unable to ascertain what sum is due, or to determine the allegations of the said libel; it is, therefore, ordered by this Court at the instance of the libellant, that a jury come; and thereupon came a jury, &c., who, &c., upon their oaths do say they find all the allegations of the libel to be proven, and that the libellants are justly entitled to have and recover therein three hundred and eighty-one and thirteen one hundredths dollars; and that they have a lien for the said sum on the said Boat, her tackle, &c." Then follows a judgment of condemnation of the said Boat, to satisfy the said sum; and an order that it be sold by the proper officer.

After the entry of the foregoing judgment, a motion was made by certain attorneys of the Court as *amici curiae*, to set aside the verdict in the case, and to dismiss the libel, on the ground, that there were no claimants before the Court; and because the Court had no jurisdiction over the vessel to render a judgment of condemnation, as no process of monition was issued on the libel.

This notice was not then acted on, but was continued by a special entry of continuance. At the next term, the same attornies still appearing as *amici curiae*, their notice was sustained, the previous judgment set aside, and the libel dismissed.

From this judgment an appeal to the Supreme Court was claimed, and allowed by the Circuit Court.

It is here assigned, that the Circuit Court erred in sustaining this motion and in setting aside the judgment before rendered; and in dismissing the libel.

BLISS, for the libellants, insisted,

1. That the judgment was regular. The bond which was taken by the sheriff was not that which is authorzied by the statute, therefore the lien continued, and could be enforced only a by a condemnation and sale of the Boat.

If the claimant had appeared in the Court below and put in a formal claim, this judgment 'was the only proper one. (Reed v. Martin, 9 Por. 180.)

2. There was a sufficient monition to all parties in interest. The writ of monition is nothing more than a direction to the proper executive officer to give notice, and in this country a clause of monition is usually inserted in the writ of seizure· (Dunlap's Adm. Pract. 137.] The mere seizure is necessarily a notice to all the world; but in this case the notice was ample, and should be considered sufficient; Dunlap's Pract. 141.

3. The appearance made was a warrant of monition. [3 Dallas 87 ; 9 Wheaton 400 ; 8 Porter 442.)

4. It was not competent for any one, after judgment to appear as *amici curiae*. The Court will hear any one previous to judgment, but motion to set it aside, ought to be made by a party alone. [Taylor's Glossary 28, note.]

5. In contemplation of law, the Boat is in the custody of the officer seizing it, until the statutory bond is executed. [Livingston v. The Steam Boat Tallapoosa, 9 Porter 111.) Or until a stipulation is permitted by the Court. (4 Cranch 2 ; 1 Gal. 75, 478; 2 Mason 409,: 10 Wheaton 497 ; 1 Kent's Com. 358.]

6. Admitting the proceedings to have been irregular, the libel ought not for that cause to have been dismissed. Courts of admiralty do not set aside proceedings for informalities, but always require the party to amend. (7 Cranch 389 ; 1 Wheat. 9 : 9 ibid. 381, 391 ; 12 ibid. 13 ; 2 Gallison 526.)

7. The error, if there was any, could not be corrected at a subsequent term. [Dunlap's Practice 671, Neal v. Caldwell, 3 Stew. 134 ; Wilson v. Torbert, ibid. 296.)

STEELE, with whom was JONES, contra, insisted, that the judgment of the Circuit Court was proper, because,

1. There was no monition. A monition is a writ issued by the clerk; although it may be incorporated with the writ of seizure, it must be specific in terms, and prescribe *how* notice is to be given, to affect all persons claiming an interest; it requires the officer to attach a notice to some conspicuous part of the vessel. [9 Cranch. 144 ; Dunlap's Pract. 137, 141.] It is this writ, and this alone, which gives jurisdiction to the

Court. The return of the sheriff shows what notice was given and it is different from that required by admiralty law.

2. The Boat was released and not in the custody of the Court, therefore, no decree of sale could be given.

3. There is no question but that any Court, on its own mere motion may correct its errors at the same term; and if an order is made, which has the effect to continue the consideration until another term, the judgment is not in such a case to be considered as given; it is suspended until the Court determines, whether it shall be set aside or otherwise.

GOLDTHWAITE, J.—In our opinion the judgment of the Circuit Court, setting aside the previous judgment by default and dismissing the libel cannot be sustained.

The principal argument which has been urged against the regularity of the judgment by default, is, that no writ of monition was ever issued by the clerk. If, in point of fact, a monition had never issued this would not be a sufficient cause to dismiss the libel as the usual course of practice in admiralty Courts, is never to send the party out of Court so long as the proceedings can be made perfect by amendment, whether in form or substance.

The Caroline, 7 Cranch 496; The Adeline, 9 ibid. 244; The Dwine Pastora, 4 Wheat. 52; The Harmony, 1 Gallison 123; Orne v. Townsend, 4 Mason, 541.

2. If no monition had issued, or if its service was irregular and defective, it was entirely competent for the Court to have proceeded to direct such a course as would effectually protect the interests of those persons, who were before the Court, by directing notice to be given by publication.

3. It is evident from the nature of the proceedings *in rem*, that those who are interested in the thing seized, being unknown, must receive notice, either by publication, or from the notoriety of the seizure. In most cases, the latter would be the more effectual, as the custody could scarcely be changed without the knowledge of those who were connected with the previous possession. It is usual, however to give notice in some gazette, and by some other mode of publication. In most, perhaps all of the Courts of admirality of the U. States, the mode

of giving notice on monition is prescribed by rule, and it varies in many of the jurisdictions. (Dunlap's Adm. 134.)

In the absence of all rules of Court, directing the practice in such cases as these, it is probable that the mere taking of the property into the possession by the executive officer of the Court, ought to be considered as notice to all the world; no injury, or none to any extent, can result from this, when it is considered, that in case of default, any claimant may interpose his claim within a year and a day, according to the general course of practice. [Reed v. Owen, 9 Por. 180.] In this case however, the monition was given by publication in a gazette. It is also the general rule, that as soon as the process is commenced and the arrest of the property made, it is considered in the custody of the law, and the jurisdiction of the Court over the thing seized commences. (Burke v. Trevett, 1 Mason 100.)

4. This view is satisfactory to show, that the Circuit Court should not have dismissed the libel; but it is necessary to proceed farther, and ascertain if the judgment by default was regular.

The bond taken by the sheriff in this case, is not the one described by the statute, and therefore, the lien was not discharged by it; but continued in full force, and the Steam Boat is to be considered as yet within the jurisdiction. (The Struggle, 1 Gallison 477.)

We have already held in a former case, Livingston v. The Steam Boat Tallapoosa, 9 Porter 111, that where a bond was given, and the lien upon the Boat thereby destroyed, this of itself did not amount to the interposition of a claim, so as to form the *contestatio litis.* But in the present case, there was an express disclaimer made by the attorneys, who had marked their names for the defence of any intention to appear in behalf of any person. In this condition of the case, it was proper to proceed to ascertain the lien and its amount. It was competent for the Court to determine this matter for itself, or as done here, to call in a jury. The amount of the lien once ascertained a judgment of condemnation, an order of sale was a matter of course.

What remedy by execution, or by proceding on the bond as

a stipulation, the parties may have, is not now to be determined.

The judgment of the Circuit Court must be reversed, so far as it sets aside the previous judgment by default, and dismisses the case ; and the case is remanded to the Circuit, with instructions to proceed on the judgment entered condemning the Boat for the payment, of the plaintiff's lien.