## WILKINSON ET AL. *vs.* CHEATHAM ET AL.

[BILL IN EQUITY TO ENJOIN SALE OF WIFE'S SEPARATE STATUTORY ESTATE, UNDER MORTGAGE EXECUTED BY HUSBAND AND WIFE TO SECURE A DEBT FOR MONEY BORROWED DURING COVERTURE, OSTENSIBLY FOR THE WIFE, BUT REALLY FOR THE USE OF THE HUSBAND.]

1. *Married woman, without separate estate; powers and disabilities of.*—A married woman, in this State, without a separate estate, is under the disabilities of a *feme covert* at common law. Generally her contracts have no obligation, except for necessaries. She cannot become a trader, or engage in business and enter into contracts, as an unmarried woman.

3. *Same; statute regulating "the separate estate of the wife;" force and effect of.*—The statute of this State regulating "the separate estate of the wife" does not alter her powers in this respect, and clothe her with the capacities of a *feme sole*, or a "free dealer," in reference to her statutory separate estate, until after her husband, as her trustee, has been removed by decree of the chancellor, from the control of her statutory separate estate.—Revised Code, § 2384.

3. *Same; power of wife over, while husband continues trustee; to what confined.*—Until the husband is so removed by the decree of the chancellor, the wife's powers over her statutory separate estate are confined to the limits prescribed by the law of its creation. She may pay her debts contracted before marriage.—Revised Code, § 2370. She and her husband may sell her estate for re-investment, or to be used by the hus-

band for her benefit.—Revised Code, §§ 2373, 2374. She may burden it with the support of her family.—Revised Code, § 2376. She may dispose of it by will.—Revised Code, § 2378. And, on the removal of her husband, as her trustee, she may resume an absolute control over it as a *feme sole.*—Revised Code, § 2384. Beyond these powers, she cannot go, without resort to a court of equity.—*Expressio unius exclusio alterius.*

4. *Same ; how wife cannot borrow money, while husband's trusteeship continues.*—A wife, living with her husband, cannot. during coverture, contract a debt in her own name for loaned money, and bind her statutory separate estate by a mortgage to secure the repayment of the money thus loaned, on her credit, save for the purposes named in the statute, and in the manner therein required.

5. *Separate estate of a married woman, is a trust estate ; chancery, on proper application, will interpose to direct trustee in management of.*—The statutory separate estate of the wife is a trust vested in the husband as her trustee, and a court of equity will interpose, when necessary, to direct the husband in the management of the same, when the powers bestowed by the statute creating such estate fail to be sufficient, or the protection and preservation of the estate for the wife's benefit may require it.

APPEAL from Chancery Court of Montgomery.
Tried before Hon. Adam C. FELDER.

THE facts are sufficiently stated in the opinion.

WATTS & TROY and CHILTON & THORINGTON, for appellant.
RICE, SEMPLE & GOLDTHWAITE, *contra.*

[Although careful search has been made for the briefs in this case, the Reporter has been unable to obtain them.]

PETERS, J.—This is a bill filed by a married woman, by her next friend, against her husband and her and his mortgagee and the assignee of such mortgagee, to enjoin a sale of her statutory separate estate, mortgaged by her and her husband to secure the payment of a debt purporting to be contracted by the wife for a loan of two thousand dollars to her after her marriage. The sale was enjoined by the chancellor below, and the defendants in that court bring the case here by appeal, and assign the chancellor's decree for error.

No notice is taken, in this opinion, of the common law

and equity powers of a married woman to make contracts in reference to her separate estate at common law ; because it is presumed that the law governing such estates has nothing to do with this estate, which is strictly a statutory estate, such as was unknown at common law, and it is to be governed solely by the statute creating and regulating it.

The correctness of the chancellor's decree, in this case, depends upon the construction of the law of Alabama governing " the separate estate of the wife."—Revised Code, §§ 2370 to 2388, *both inclusive.* This important statute was not intended to operate upon the contract of marriage, but to place the wife's estate upon a basis hitherto unknown to our jurisprudence. It was intended to enlarge the powers over it after her marriage, to a certain limit, and to restrain and circumscribe the powers of the husband *for her protection;* for, had she been able to protect herself, there would have been no necessity for such a law. The statute was not intended so to operate upon her as to make her a *feme sole*, or a " free dealer," and to enable her to do business on her own account, as if she had never been married. But so far as her property is concerned, it was intended to modify her marital powers over it in connection with her husband ; and it defines alike her control over it during her coverture, and her power over it after the marriage has terminated, and also the right of her husband as her trustee. This creates a peculiar statutory estate, to be held, controlled, and conveyed in the manner and for the purposes the statute has directed. It is not a law modifying the common law rights of the wife, as wife, but it is a new rule which wholly displaces the common law in reference to her title to her estate and her power to dispose of it. It is a trust estate in the hands of her husband, " as her trustee," for her use, to be held and disposed of as the statute prescribes. Separated from her estate, the wife is still a married woman, under all the disabilities of coverture, save so far as these disabilities are modified by the statute. But, connected with her estate, her powers over it are only such as the statute bestows. As a trust estate, the husband may be aided by the extra-

ordinary powers of a court of chancery to direct him in its management, or the wife in its protection, under such exigencies as may require such an interference. But neither the husband, nor the wife, nor both together, without the aid of a court of chancery, can deal with the estate thus created, otherwise than the law of its creation may permit. The coverture of the wife merges her capacity to make contracts generally in the husband, except in such cases as the statute enables her to deal with her own property. —2 Story Eq. §§ 1370, 1367; *Cannel v. Buckle*, 2 P. Williams, 243, 244; 1 Bla. Com. 442, 443. She cannot deal by contract with her husband, nor with others, except to the extent and in the manner prescribed by the statute. She may receive property, but she cannot sell it, except in the way and for the purpose prescribed by law.— *Goree v. Walthall*, *Adm'r*, January Term, 1870; Revised Code, §§ 2371, 2384. In the case of *Bibb v. Pope*, 43 Ala. 190, it is said, "The sale that the wife and her husband are permitted to make without the aid of chancery, is only such a sale as is mentioned in the act; that is, a sale for the purpose of re-investing the proceeds in other property, which is also the separate estate of the wife, or for the support of the family."—p. 200. To this it may be added, that they may sell it to pay the wife's debts contracted before marriage; (Rev. Code, § 2370;) or the proceeds to be used by the husband in such manner as is most beneficial for the wife.—Rev. Code, § 2374. The wife may also dispose of her statutory separate estate by will, but she has not the powers of a *feme sole* over it, until the husband has been removed by decree of the chancellor, on a proceeding for that purpose in a court of equity.—Rev. Code, §§ 2378, 2384. Undoubtedly, a court of chancery will aid the husband and the wife in the proper administration of her statutory separate estate. Under our system a married woman is, in a great degree, a ward of chancery, and her estate is a trust estate. In such a case, courts of equity have a peculiar jurisdiction over her and her estate, which will always be exercised for her protection and the preservation of her estate.—2 Story Eq. §§ 1327, 1366, 960, 961;

Revised Code, § 2372; *Marsh v. Marsh, Adm'r, et al.*, 43 Ala. 677.

The statute does not make the wife a trader in general, with powers to enter into all kinds of contracts touching her separate estate, and to bind herself as a *feme sole*. Without a statutory separate estate, she would be under all her common law disabilities, as to making contracts of any kind; so that her power to make contracts at all, grows out of her connection with her separate estate. When this is gone, her power to make contracts is gone also. Then, her statutory separate estate being the creature of the statute, her powers over it are also derived from the statute. These are,—the power to pay her debts contracted before marriage, the power to sell it for re-investment or to be used by the husband for her benefit; the power to subject it to the burden of the support of her family; the power to dispose of it by her will; and the power to resume the absolute control of it, as a *feme sole*, on the removal of her husband as her trustee, by decree of the chancellor on a proceeding for that purpose, in a court of Equity.—Rev. Code, §§ 2370, 2373, 2374, 2376, 2378, 2383, 2384. Here the statutory powers of the wife end; and over such an estate she has no others. Her estate is wholly statutory and her powers over it are wholly statutory. If she needs more she must resort to a court of chancery. And these powers, thus given to her by the statute, are, wisely, all that are needed, and possibly, all that can be wisely bestowed upon her, unless the legislature shall abandon all idea of her protection, and the preservation of her estate. And it is not this that the legislature has been seeking to accomplish. Under the powerful control of the husband, the wife can hardly be said to be free. Swayed by the subtle influence of love and fear, she has nothing that she would willingly deny him. Knowing this, a wise and humane legislation has attempted to provide against its often fatal effects upon her estate. It has restrained both the husband and wife to limited and well marked powers over her estate, so that neither he nor she shall waste it. She cannot therefore go into the market as a trader; she cannot make contracts, save as the statute

permits. For, personally, as a married woman, she has no such power to make contracts, except as this power is an incident belonging to her separate estate, and as it is given by express statutory grant in connection with her estate. But there is no power given by the statute to the wife to enter into contracts to borrow money, or to execute a montgage to secure the repayment of borrowed money. And it is not a power incident to her statutory separate estate. It does not therefore exist; because, unless it is an incident of the statutory estate, it does not belong to her, inasmuch as it does not belong to a married woman or wife without a separate estate. For, a married woman without such separate estate cannot make a contract for the loan of money, or any other valid contract, except perhaps to bind her husband for such necessaries as are suitable to her degree in life.—2 Kent, 146; *Walker v. Laighton*, 11 Foster, 111; *Calkins v. Long*, 22 Barb. 97; *Concord Bank v. Bellis*, 10 Cush. 276; 1 Bla. Com. 442 and *notes*.

The proofs in this case eminently illustrate the necessity of confining the powers of the husband and wife over her estate to the strict statutory limits. Her testimony in this case, which is not materially contradicted, shows that she was the unwilling instrument of the husband, who had negotiated the loan and procured it, in entering into the contract for the loan and the mortgage. The money was for him, and not for her; she did not need it, or take any active steps to obtain it. The husband was the sole negotiator, and the note and mortgage deed were prepared without consulting the wife, and she was placed in the position of principal debtor, when, in truth, she was but the surety for the husband, who had agreed to pay an enormous interest for the use of the money loaned; and said interest was secured by the husband's own notes, given to Wilkinson for that purpose; and the husband, in the end, got the money and used it for his own purposes. The wife can not be protected from the grossest frauds and oppression, if the construction of the statute above contended for is abandoned. I therefore think that the construction put on this important law, by the learned chancellor, in his decree in the court below, was correct. It will be but a mockery

of the purpose of the legislature, to assume that this law is intended for the protection of married women, if such a transaction as this can be allowed to stand. It is against the policy of the statute, and under it any unscrupulous husband can *make* his wife sacrifice her separate estate to enable *him* to borrow money for himself in her name ; thus giving facility to the accomplishment of the very evil which the statute was devised to prevent,—that is, the destruction of the wife's estate in conformity to the wishes of an improvident husband, without the slightest benefit to her. The law was not intended to permit, or to sanction, any such reckless and heartless confiscation of the wife's estate, however skillfully it may have been devised.

The decree of the chancellor in the court below is affirmed. The appellant will pay the costs of this appeal in this court and in the court below.