## COWLES vs. MARKS.

[BILL IN EQUITY TO REMOVE CLOUD FROM TITLE TO LAND, AND TO FORECLOSE MARRIED WOMAN'S RIGHT OF REDEMPTION TO LAND BOUGHT BY HER PARTLY ON CREDIT, AND SOLD UNDER MORTGAGE FOR BALANCE OF PURCHASE-MONEY.]

1. *Married woman with separate statutory estate; can not purchase land partly on credit, and take title to herself.*—A married woman, in this State, since the passage of the act of the general assembly of March 1, 1848, entitled, "An act *securing* to married women their separate estates, and for other purposes," has no legal capacity to purchase lands and take title to herself. And if she attempts to do so, and enters into such a contract, and pays a part of the purchase-money and gives her promissory notes for the balance of the purchase-money, and secures the notes by a mortgage on the lands thus attempted to be sold to her, she may go into chancery and have such sale to her set aside, and have her money paid back to her.

2. *Same; what relief chancery will give to.*—In such case, if the lands should be sold under a power in the mortgage, and the purchaser at the mortgage sale comes into chancery against the married woman to foreclose her right of redemption, and to have her deed given up and cancelled as a cloud upon his title, upon a cross-bill filed by such married woman setting up her rights as a married woman under our statute, the court will direct her debt to be held as a charge upon the land, and decree her money to be paid back to her, within a reasonable time, or in the event of failure, that the land be sold, and her debt paid out of the proceeds of such sale.

3. *Same; for what married woman will be held to account.*—But such married woman will be held to account for the value of the rents and profits, if any, which accrued to her out of said land during her use and occupation, which have been used by her "for articles of comfort

and support of the household, suitable to the degree and condition in life of the family of said married woman, and for which the husband would be liable at common law."

APPEAL from the Chancery Court of Montgomery. Heard before Hon. A. W. DILLARD.

All the facts necessary to a proper understanding of the case will be found in the opinion.

ELMORE & GUNTER, for appellant.—1. It is sought to sustain the chancellor's decree in this case by the authority of the case of *Shepherd v. Shafaer*, 45 Ala. But that case has no application; here, the trade is alleged to have been with the wife, and for her, and the money is alleged to have been paid (in effect) by her. John B. Scott, who made the sale to Mrs. Cowles, can not claim that he did not have notice with whom he was dealing. And the complainant, having taken a transfer of the notes, not payable in bank and after maturity, takes them subject to all the equities between the original parties.—7 Port. 541.

The notes are not signed by Mrs. Cowles in the presence of two witnesses, and can in no sense be called her debt. *Smyth v. Oliver*, 31 Ala. And Mrs. Cowles having a deed to the land, and being in possession of the land, all persons are charged with notice of the character of her title and interest in the land, and of all of her equitable rights which are binding on her vendor.—*Burns v. Taylor*, 23 Ala. 255; *Garrett v. Lyle*, 27 Ala. 486; *Brewer v. Brewer and Logan*, 19 Ala. 482.

2. But even if the case of *Shepherd v. Shafaer, supra*, is applicable, the decree of the chancellor is wrong, for Mrs. Cowles should at least be paid, after the complainant's notes are satisfied.

3. The case of *Smyth v. Oliver*, 31 Ala., defines the nature of the use the husband can make of the wife's money and property.

4. The bill and answer to the cross-bill clearly show that this transaction was made for the wife, and with her means. Pleadings are to be taken most strongly against the pleader.

See *Quarles v. Winter*, 43 Ala. 692. The mere fact that the husband, who was the legal custodian of the wife's money and estate, delivered the money to the seller of the land, amounts to nothing, for he was the proper person to have done it for her; and if he did it even out of his own means, it would be good and valid as a gift, and create at the instant a separate estate in her.—*Molton v. Martin*, 43 Ala. 651.

But the bill and the answer to the cross-bill clearly show that the sale was to the wife; that she bought; that she had a separate estate, and that this land was bought as an adjunct to her plantation; and on the pleadings, "the allegations of the bill being taken most strongly against the complainant, and in favor of the defendant," (43 Ala. 696,) there being no averment by the complainant that the money used did not belong to the trust estate, this court must hold that it was the wife's money that made the cash payment, and the five hundred dollars subsequently paid.

The only question, then, is, can the partial payment made by the husband out of the wife's estate be sold out and lost by reason of a mortgage, or vendor's lien, for the credit payments?

The wife's disabilities are not removed by any statute. She can not make a valid contract, except as expressly authorized. The notes taken, are not hers, unless the statute makes them so, and we know of no statute that attempts it. Section 2373 of the Code only provides a way in which the estate of the wife may be conveyed when the exigencies of the family require a conveyance. Her assent to the "purchase, therefore, is nothing, being at the time incapable of contracting, and the notes are those of the husband.—*Wilkinson v. Cheatham*, 45 Ala.

The object of the law was to preserve the wife's estate free from the speculations and disasters of the husband, and to bind it only for necessaries for the family; which would be defeated, it seems to us, if the husband could contract for the purchase upon credit of an estate, and mortgage the wife's property for the credit payments. The law only allows the husband to invest, and declares the

property acquired by the investment the separate estate of the wife; which clearly contemplates what the word "invest" means, the exchanging of money for property, and not a purchase upon credit.

The proper decree, it seems to us, is to have the land sold under decree of the court to foreclose mortgage of husband, and to direct that Mrs. Cowles shall be refunded the $2,250 paid upon the purchase, and that the remainder be applied to the discharge of the complainant's notes against the husband.—*Martin v. Molton*, 43 Ala.; *Bibb v. Pope*, ib.; Code, §§ 2371–4. This works no hardship, for the creditor knew well where he stood, and was aware of the rights of Mrs. Cowles by the contract he made, and the deeds and notes made and taken, and if he did not, there can be no one with a higher equity than a married woman, who is incapable of protecting herself, and can not be guilty of *laches*.

The cross-bill was filed merely because Mrs. Cowles prayed relief upon the case made by the complainant in his bill, the rule being that there must be a cross-bill whenever relief is prayed. There is no necessity for testimony to sustain the allegations of a cross-bill which are admitted expressly or impliedly by the original bill.

MARTIN & SAYRE, *contra*.—The record in this case presents a state of facts not before brought before this court. In *Bibb v. Pope*, (43 Ala.) and *Wilkinson v. Cheatham*, (January term, 1871,) the decision of the court is, that the wife can not mortgage her separate statutory estate, for the benefit of her husband.

In *Martin v. Molton*, (43 Ala.) the only question determined was, that the separate statutory estate of the wife could not be converted into a contract estate, and be subjected to the payment of a note given for the land by her and her husband, not executed in the presence of two witnesses.

There is no averment in the cross-bill and no proof of the " defendant's knowledge, that the use made of the money of Mrs. Cowles by her husband was in derogation

of her right.—*Shepherd v. Shafaer*, 45 Ala. 233.    That case conclusively establishes the proposition that Mrs. Cowles was entitled to no relief on the cross-bill.    The allegations in the answer of Marks are fully sustained by the evidence, to which the attention of the court is respectfully invited.

. There is no pretence that Mrs. Cowles did not know that the title to the land was in her name, and that the land itself was in her possession and used for her benefit.

The single allegation in the cross-bill, upon which its equity must depend, is, that the cash payments were made with moneys belonging to her statutory estate.    This allegation is not admitted by the answer, and there is no proof to establish that proposition.    The cross-bill, then, stands as if no such allegation had been made.

The original bill contains no such averment, and there is no averment in it from which that inference can be made.

The property was purchased for the benefit of Mrs. Cowles' statutory estate ; was used for that purpose, and was of the annual value of five hundred dollars, besides adding greatly to the value of her original estate.    She quietly holds and enjoys this property.    It is advertised for sale under the mortgage, and purchased by Mr. Marks at the sale.    No complaint is made between the day of the purchase and the day of the sale, and no word, on that day, is heard, giving word that a law-suit would result to the purchaser.    But now she appears, and claims, what she calls her money, with interest.    She makes no offer to pay for what she has actually received.

If a decision be rendered in her favor, the result would be, that for ten years she would have had the use of the land free, and still be entitled to recover the amount of the money paid, with interest thereon.

The court will certainly hesitate before pronouncing an opinion which would produce such monstrous results.

But, under section 2374, the property of the wife, when it is money, "may be used by the husband, in such manner as is most beneficial to the wife."    This power is given

Cowles v. Marks.

exclusively to the husband. Its exercise does not require the co-operation of the wife. The husband is the sole judge of the time and manner of investment. The statute only requires that it shall be for the benefit of the wife. The investment can not be for his own benefit, nor for the benefit of a third person ; but whenever the transaction is a *bona-fide* one for the benefit of the wife, it will be upheld.

The court can not enquire whether or not a better investment could have been made. It can not review the judgment of the husband on that question. He may have acted wisely or unwisely, but whether he has done so or not, is not left to the court to ascertain. The only question for the court is, has the husband, in good faith, exercised the power conferred upon him by law ? The facts in this case abundantly prove that the investment of Mrs. Cowles' money was for the benefit of her statutory estate ; that the land purchased was indispensable to the enjoyment of her adjoining plantation, and added largely to its value.

In reference to her having a separate estate, the allegation is that she had a plantation adjoining the land, which was her separate estate.

The conveyance of the land to Mrs. Cowles, by Scott, was, in legal effect, a sale to Mrs. Cowles. The purchase-money might have been paid by her, or some third party.

Marks had no connection with the land until his purchase at the sale under the mortgage.

The mortgage is executed in the presence of two witnesses, and is, in effect, an acknowledgment of a debt due. So that, even if notes were void, the debt upon which the mortgage is based is sufficiently established, not only by the mortgage itself, but by other proof. The notes did not constitute the debt—they were merely evidence of the debt.

The execution of the mortgage had the same effect as if the notes had been properly executed. It was not necessary to introduce the notes as evidence.—*Fenno et al. v.*

40

*Sayre & Converse*, 3 Ala. 469 ; *Gillett v. Powell*, 1 Speer's Eq. Rep. (S. C.) 155.

Mrs. Cowles is bound by her admission in the mortgage *Hartwell v. Blocker*, 6 Ala. 586.

PETERS, J.—This is a bill filed by William M. Marks, as complainant, against Laura S. Cowles and her husband, Thomas W. Cowles, as defendants, in the chancery court of Montgomery county, on the 16th day of August, 1869. The main purpose of the bill is to quiet the title of the said Marks to a certain tract of land lying in said county of Montgomery, and particularly described in the pleadings. The material facts are these : On the 13th day of September, 1859, John B. Scott attempted to sell the tract of land mentioned in the bill to the appellant, Mrs. Cowles, wife of Thomas W. Cowles, for the sum of $7,000. Seventeen hundred and fifty dollars of this sum was paid in cash by Mrs. Cowles at the time of the purchase, out of the moneys of her statutory separate estate, and she and her said husband gave their four promissory notes, each for the sum of $1,312.50, due at different dates, for the balance of the purchase-money for said land. These notes were payable to Scott, and were secured by a mortgage in his favor executed by Mrs. Cowles and her said husband on said lands, which bears date said 13th day of September, 1859. Cotemporaneously Scott and wife executed a deed to Mrs. Cowles. It is also alleged, "that though the name of Thomas W. Cowles appears on said notes and mortgage, he was not taken as surety thereon, but to comply with what was supposed to be the law in reference to married women." These notes were not attested in the presence of two witnesses. This mortgage contained a power of sale in favor of Scott, upon a failure to pay said notes and interest thereon, or either of them, as they fell due. There was a failure to pay the notes, except the sum of $500 paid on the 4th day of January, 1861. On the 13th day of February, 1868, Scott sold the said lands, under the power in his mortgage, and said Marks (appellee) became the purchaser at the sum of $4,000 ; and on the 11th day of March,

1868, Scott, as mortgagee, made a deed to said Marks, as purchaser at said sale, for said lands; and afterwards, on the 9th day of October, 1868, Scott and wife also made their deed to said Marks for said lands, in consideration of the sum of $1,000. And upon the title thus derived Marks brought his suit to recover said lands of Mrs. Cowles. Marks avers that he has the legal title to said lands, but that he "is willing, if the said Laura S. Cowles and Thomas W. Cowles so elect, to let said sale be considered as of no effect, and that said lands may be sold under a decree " of the chancery court. It does not appear with certainty that the said four promissory notes given by Mrs. Cowles to Scott for the purchase-money of said lands were assigned to Marks by Scott; but Marks avers, that if said mortgage is invalid, then "he is entitled to a vendor's lien" on said lands. And Marks insists, that he is entitled to have the deed executed by Scott to Mrs. Cowles delivered up to him and cancelled, so that there may be no cloud on his title; and he prays that Mrs. Cowles may be foreclosed of her equity of redemption, and for general relief.

Mrs. Cowles answers, and admits the allegations of the bill, and by way of cross-bill she elects to have the land sold, but insists that on account of her coverture, and under the laws of this State, she is not liable as the maker of said notes, and that the sale of said lands to her by Scott was unlawful and void, and that she is entitled to a resulting trust in said land to the amount of the money she had paid Scott for the same, with interest thereon, as her separate estate under the laws of this State; and prays that said lands be sold, and the proceeds applied first to the payment of her debt until that is satisfied. Marks and the husband of Mrs. Cowles are made defendants to the cross-bill, and each puts in a separate answer, and admits the coverture of Mrs. Cowles, and the sale to her of the lands as shown in the original bill. And Marks alleges that the lands sold to Mrs. Cowles were adjacent to lands owned by her as her separate property, and were necessary for the use of her plantation, and that large quantities of timber had been taken therefrom by her and her said husband; but it is not

shown that this happened since his title and right to the possession had accrued. He demurs to the cross-bill.

There was some testimony taken, but it does not materially alter the character of the case as made in the pleadings. The learned chancellor in the court below, by his decree, ordered the lands to be sold as upon a foreclosure of a mortgage, and the proceeds of the sale to be paid over to Marks, and paid no attention to the cross-bill, so far as appears from the decree. Mrs. Cowles appeals to this court from this decree.

Under the facts the question arises, what are the rights of all the parties before the court? Did the transaction between Scott and Mrs. Cowles give him any right to hold on to her money obtained from her under sanction of the attempted sale, after she elected to repudiate it? Will the court, dealing with the land only, permit it to pass from its jurisdiction and leave her unpaid? Can Marks be treated as an innocent purchaser without notice of her equity, if she has any; and to what extent, if at all, is she liable to account for rents and profits of said land?

One who deals with a married woman in this State about her property, must take notice of her powers and her disabilities. These are the creatures of the law, and every one is bound to take notice of the law. The ignorance of the individual does not suspend the law.—*Gwynn and Wife v. Hamilton's Adm'r*, 29 Ala. 233; 2 Kent, 655, and notes, (11th ed. by Comstock, 1866); Story's R. 353; 1 Story Eq. § 116; Broom's Max. 190. This is so with regard to all the statutes of the State. A person can not lend out his money at usurious interest.—Rev. Code, § 1831. So, likewise, a person can not be bound to perform a contract founded on a gambling consideration.—Rev. Code, § 1874. So, also, a person can not loan his money on a "Sunday, unless for the advancement of religion, or in the execution or for the performance of some work of charity, or in case of necessity."—Rev. Code, § 1882. If this is done, and a note is taken on the sabbath for its repayment, the lender, when he finds himself confronted by a plea of the illegality of his contract, can not answer such plea, by replying that

he did not know the law, and that to disallow his plea was to swindle him. The rights of a married woman are just as sacred as the rights of an infant, or the law for the protection of the sabbath. It is not by her means or by her device that her powers over her estate are hampered by disabilities. The sovereign power, in which she has no voice to speak, and which intends all its regulations for the best, has so fixed it. It is not, then, her fault that she clings to all the disabilities which afford her protection. It is her right to do so, and it is among the highest duties of the courts to see that this right is upheld. Since the *first* of March, 1848, the general assembly of this State, upon repeated occasions, has attempted by a peculiar system of regulations to *secure* to married women their estates as their separate property. In this effort they have not attempted to patch up the old system with amendments, as by pouring new wine into old bottles, but by devising a wholly new system which is *unique* and *complete* in itself. And to make this more secure, they have stricken down the old system by a sweeping repeal " of all laws and parts of laws in conflict with the provisions" of the new system.—Acts 1849–50, p. 65, § 11; Rev. Code, §§ 2370 to 2388, both inclusive. In conformity with these enactments, now of more than twenty years' standing, it has been settled by this court that a married woman with a statutory separate estate can not go into the market as a *feme sole* trader or free-dealer; she can not contract debts as such trader, or execute a mortgage for the security of such debts.—*Wilkerson v. Cheatham,* 45 Ala. 337; *Bowen v. Blount,* in MSS. Then, the sale of the lands named in the complainant's bill by Scott to Mrs. Cowles, her notes for the purchase-money, and her mortgage to secure them, were all made without authority, and they are without any legal validity, unless she chooses to affirm them; and this she refuses to do. Therefore, the notes and the mortgage were invalid, and the sale under the mortgage can not effect her rights. And Marks does not show that he has done more than to step into Scott's shoes. He must be visited with a knowledge of all the facts and all the law connected with his title.—

*Thweatt v. Johnson,* 18 Ala. 781. His equities and Scott's are the same. He comes into court and says that he "is willing, if the said Laura S. Cowles and Thomas W. Cowles so elect, to let said sale be considered as of no effect, and that said lands be sold under a decree" of the chancery court. He also alleges, "that although the name of Thomas W. Cowles appears on said notes and mortgage, he was not taken as a surety thereon, but to comply with what was supposed to be the law in reference to married women." It is also insisted by Marks, "that he is entitled to the vendor's lien." These allegations are not denied by Mrs. Cowles, and she elects to have the land sold, and insists that she shall have returned to her the money, with interest, which she paid to Scott on the abortive sale, out of the proceeds of the sale thus to be made under decree of the chancery court.

This is the main question in the case. And the learned chancellor in his decree in the court below acted without due regard to her rights. There was no controversy as to the balance of the sums due upon the notes, and there can be none, if the notes and the mortgage to secure their payment are voidable and illegal, and no controversy about the land. Mrs. Cowles does not claim it, but the proceeds of the sale under the chancellor's decree are before the court within its potential jurisdiction. Then, as between Mrs. Cowles and Marks, the sole question is, what shall be done with it? Shall she lose her money, which can not be legally taken from her in this way, and turn it over to Marks, because he did not know the law, or because he acted under a misapprehension of her powers and her rights? or shall justice, administered according to law, be done her in the first instance, and leave him, and others like him, to grow wiser by their mistakes? I think the latter course is the true one. It is vain to say that the wife can defend herself against the solicitations, or more often against the gentle restraints, of the husband, when he wishes to use her estate. "All know and feel," says Chief-Justice MARSHALL, "the plaintiff, as well as others, the sacredness of the connexion between husband and wife. All

know, that the sweetness of social intercourse, the harmony of society, the happiness of families, depend on that mutual partiality which they feel, or that delicate forbearance which they manifest, towards each other."—*Sexton v. Wheaton*, 8 Whea. 239, 229. And all know, that in a great number of instances, this marital congeniality would soon end, and that thorns and thistles would soon spring up in suffocating abundance, where but yesterday the rose and the lily bloomed, if the wife should be so luckless as to oppose the husband in the control and the management of her estate. Women are naturally amiable and yielding; and it is only by the impassable and impregnable barriers of the law that their estates can be defended and *secured* against the powerful and often fatal influence of the husband. On this important conviction our law is founded. It is a grant to the married women of the State not less important to the protection of their interests than *Magna Charta* itself has been to all who speak our native tongue. The husbands of the State have made this pledge to their wives; let it be kept in sacred good faith, and in the fullest protective power of its generous intent. I therefore think that the learned chancellor fell into grave error, both in the spirit and in the legal principles of his judgment in the court below. He should have ascertained, in a proper way, the amount of money of the separate property of Mrs. Laura S. Cowles which went into the hands of said John B. Scott on said abortive sale by him to her, as mentioned in said bill of complaint, and interest thereon, whether the moneys had been paid by her, or by her said husband, or by any one else for her, on said abortive contract of sale of said lands to her, and also the value of the rents and profits derived from the use and occupation of said lands by her, if any such rents and profits there were, which were used by her, or her said husband as her trustee, for her, for articles of comfort and support of the household, suitable to the degree and condition in life of the family of her, said Laura, for which the husband would have been responsible at common law, and deducted the sum so ascertained for rents and profits, if any, from the

sum so paid by her on said abortive sale aforesaid, and decreed the balance, if any, in favor of said Laura, a charge upon said lands, and order the said lands, or so much thereof as may be necessary to pay and satisfy the charge so raised, if the said Marks shall fail or refuse to pay the same within such time as the court below shall appoint.

I am unable to consent to the position of the learned counsel for the appellee, said Marks, that the transaction between said Scott and Mrs. Cowles in reference to said abortive sale of said lands mentioned in the bill and cross-bill was "re-investment" of "the proceeds" of a sale of the separate estate of Mrs. Cowles, under section 2374 of the Revised Code. The protective force of that statute depends upon its literal enforcement. Where this is insufficient, the husband, as trustee, or the wife, must resort to a court of chancery.—2 Story Eq. §§ 1327, 1366, et seq.

Let the decree of the court below be reversed, and the cause remanded for further proceedings in the court below in conformity with the principles announced in this opinion. The appellee (Marks) will pay the costs of this appeal in this court and in the court below.