BANK OF COLUMBIA *et al. v.* JOHN A. WALKER *et al.*
AND
ADAMS, THRONE & CO. *v.* JOHN A. WALKER *et al.*

1. LEX LOCI CONTRACTUS. *Lex fori.* Rights and contracts arising under the statute laws of another State will not be enforced here except under the doctrine of the comity of States, and such rights will not be enforced here if repugnant to the polity and spirit of our laws.

2. SAME. Where there is a well founded doubt as to whether the law of the *forum* or the *lex loci contractus* should prevail, the former will always be given the preference.

3. STATUTES, REAL AND PERSONAL. A real statute is one which regulates property within the State where it is in force, and a personal statute is one which follows and governs the party subject to it wherever he goes.

4. HUSBAND AND WIFE. *Marital rights.* Where a husband, while residing in Alabama, where under the statute laws all property of the wife held by her before marriage, or which she becomes entitled to after marriage, is her separate estate, and not subject to the debts of the husband, and the property belonging to her vests in him as her trustee, who may receive and manage and control same, and he is not required to account to his or her heirs or representatives for the rents, profits and income, and such rents, profits and income are not liable to his debts, and he received property of hers and converted same to his own use, thereby becoming her debtor, and he and family afterwards moved to this State, and he bought property and contracted large debts, when he executed a deed of trust on his property in this State (before the general assignment act of 1881), preferring his wife as a creditor, it appearing that the debt to the wife was *bona fide: Held,* that the marital rights of the husband to the property of his wife, so converted by him, did not attach, and the conveyance should be sustained.

5. SAME. *Registration.* It was not necessary, under our registration laws, to register any evidence of such debt, and the registration of the deed of trust before the rights of creditors attached protected the wife.

FROM MAURY.

Appeal from the Chancery Court at Columbia.
W. S. FLEMING, Ch.

DEMOSS & MALONE and MCDOWELL & WEBSTER for complainants.

G. P. FRIERSON and GEO. T. HUGHES for defendants.

WILSON, Sp. J., delivered the opinion of the court.

The facts in these causes are brief and undisputed, and the acumen and learning of counsel have singled out the vital question in the contest, and directed, in argument, our consideration to it.

John A. Walker and his wife, Martha L., were married in Greene county, Alabama, the place of their residence, in April, 1851. They continued to live in that State until 1869, when they moved to Columbia, Maury county, Tennessee, where they have since resided.

Under the will of her father, Charles W. Barry, Mrs. Walker was entitled for life, with remainder to her children, to an undivided interest in his real estate and to some of his personalty. By proceedings instituted in the chancery court in the county of their residence, the real estate of her father was sold for partition, and her interest and that of her children in remainder, realized $3,696.

This sum, John A. Walker, under the orders of the chancery court of that county, rendered in accordance with the laws of Alabama, was permitted to receive, by executing a bond in the penalty of $4,000, conditioned to account for the same, without interest, to the children of his wife at her death. He executed the bond required, and received the money. He also

received an additional sum of $350 from the personal estate of her father, belonging to her for life, with remainder to her children.

By the will of her mother, executed in 1855, Mrs. Walker was entitled to something over $4,000 in her estate, and as an heir of her sister, Elizabeth J. Barry, she was entitled to receive from her estate about $1,600. The shares belonging to her in the estate of her father, her mother, and her sister, were received by her husband while they were residents of Alabama, and converted by him to his own use while living there.

By the laws of Alabama, in force at the time of their marriage, and subsequently amended and carried into the Code of that State during their residence therein, "all property of the wife held by her previous to the marriage, or which she may become entitled to after the marriage in any manner, is the separate estate of the wife, and is not subject to the payment of the debts of the husband."

It is further provided that property belonging to the wife vests in the husband as her trustee, who has the right to manage and control the same, and he is not required to account to the wife, her heirs, or her legal representatives for the rents, income and profits thereof, but such rents, income or profits are not liable for his debts. The husband and wife may jointly sell and convey her property in the mode pointed out in their statutes, but the proceeds are to be the separate estate of the wife, and they cannot contract with each other for sale of any property.

It is also provided that the husband has the power to receive property coming to his wife, or to which she is entitled, and his receipt therefor is to be taken as a full discharge in law and equity. The wife is also given the power to dispose of her property by will, and she may, by next friend, file a bill in chancery to call her husband to account as the trustee, and to have him removed upon proof that he is squandering or wasting her estate. These provisions of the laws of Alabama, with others bearing upon the relations of husband and wife as to her property, will be found in the Alabama Code, sections 1981 to 1997 inclusive, which appear to be an adaptation for the most part of the Acts of 1848–49–50, enacted by the General Assembly of that State.

It is obvious, under these provisions of the law of Alabama, that all the property or means of Mrs. Walker, coming to her from the sources stated, was her separate estate, and that her husband, in receiving them, did so as her trustee under the law of their domicil. This is not denied. It must also be conceded that in converting them absolutely to his own use in that State, if he did so convert them, he thereby became her debtor, and had the right to convey his own property to her, or to a trustee for her use, to secure the payment of his debt to her, and it has been so expressly held by the courts of Alabama: *Davidson* v. *Lanier,* 51 Ala., 318. This case holds that the husband does become the debtor of the wife by the reception, use and conversion of her statutory separate estate, and that he may purchase

property and take the title in his wife, and that equity will uphold the transaction as against his creditors.

So, also, it is held in that State that she cannot be bound as the husband's security for the payment of his debts, or mortgage her estate for that purpose: *Davidson* v. *Lanier*, 51 Ala., 318; *Wilkinson* v. *Cheatham*, 45 Ala., 337; *Cowles* v. *Marks*, 47 Ala., 612. And in *Worthington, Adm'r*, v. *Faber*, 52 Ala., 45, it was held that if the husband converts the wife's statutory separate estate he becomes indebted to her to the amount used, and although insolvent, and largely indebted, may secure such debt by a mortgage of property to a trustee for her, and the conveyance, if made *bona fide*, is valid against the creditors of the husband.

It seems that the husband did convert to his own use the separate statutory estate of his wife, while they were residents of Alabama, and we hold, under the provisions of the statutes of that State, and the decisions cited, that he thereby became in that State her debtor, and that she had the right there to receive a conveyance of his property to secure the payment of her debt against him, and that her title to the property thus conveyed, if made bona fide, would in that jurisdiction be upheld against his creditors.

It appears, however, that Walker, although possessed of small means at the date of his marriage, was a provident and prudent business man, and largely increased his estate; for when he and family removed to Maury county, in this State, in 1869, he brought with

him some personal effects and about $34,000 in money.
This sum he deposited in his own name in the Bank
of Columbia.   He engaged in business and checked
on this sum, and made additional deposits in the
bank.   In the meantime he purchased the house and
lot in Columbia and other property in controversy,
except some feather beds and other household prop-
erty, taking the title to himself.

He finally engaged in the mercantile business with
J. M. Larkin, under the firm name of J. M. Larkin
& Co.   Larkin committed suicide, and the firm was
found to be largely in debt and insolvent.   In this
situation Walker, as the surviving member of the
firm, on March 19, 1878, conveyed all the assets
of the firm to W. F. Moore, in trust for the benefit
of its creditors.   On the same day he conveyed all of
his individual property subject to execution to H. B.
Titcomb, in trust to secure first payment of the four
thousand and odd dollars due his children at the death
of his wife, under the will of their grandfather, and
for which he had given bond in the courts of Ala-
bama, and also his wife, in the aggregate sums abso-
lutely belonging to her in Alabama, and received and
used by him, amounting to over $5,000. . Direc-
tions were given in the conveyance as to the dispo-
sition of the property conveyed, in so far as his wife
and children were interested, and an application of
the surplus, if any, *pro rata* to his other debts.   The
partnership assets being utterly inadequate to pay the
firm debts of the firm of Larkin & Co., the com-
plainants, creditors of said firm, filed these bills against

Walker and wife and their children and the two trustees, alleging the insufficiency of the firm assets to pay the debts of the firm, and that the deed of conveyance of Walker to Titcomb, for the benefit of his wife and children, was without consideration, fraudulent, null and void, and made to cover up his property, and to hinder and delay them in the collection of their debts.

The causes were consolidated by agreement and heard together. The defendants answered, denying all fraud, setting out fully the origin of the claim of the wife and children, to secure which the conveyance was made to Titcomb.

The chancellor, upon the pleadings, exhibits and evidence, dismissed the bills, and complainants appealed. The Referees reported in favor of affirming the decree below, and they have excepted to the report.

The learned counsel of complainants have properly concluded that the obligation of Walker to his children for the sum received by his wife for life from the estate of her father, under his will in Alabama, and for which he executed in the courts in that State a bond to account at her death, is valid, and that this conveyance to secure this sum should stand. They also conclude that the conveyance is good as to the feather beds, etc., articles received by her in Alabama, and brought here in kind on their removal to this State.

The contest is, therefore, narrowed to one of law as to the validity of the claim of the wife, arising out of conversion by her husband of her statutory

20—VOL. 14.

separate estate in Alabama. It is not denied that the property conveyed to Titcomb was the absolute property of her husband. Her contention is that her husband became indebted to her in the State of Alabama, by the act of converting and using there her separate estate, that under the laws of that State he could secure its payment by conveying to her, or to a trustee for her use, her property, that this relation of creditor and debtor followed them to Tennessee, and existed here, and being a *bona fide* creditor of her husband, that he had the right, at the time the conveyance was executed, to secure her debt in preference to his other creditors.

It is admitted by her adversaries that if her husband owed her a *bona fide* debt, he had the right to provide for its payment as a preferred debt, and that such a debt would constitute a valid consideration for conveyance. They deny that he owed her a debt under the facts of the case, and insist, if he did owe her in Alabama, that on their removal to Tennessee, and becoming citizens here, subject to the jurisdiction, policy and property relations between husband and wife, fixed by our laws, his marital rights attached, and that under the policy and jurisprudence of this State relating to the rights of husbands, this debt of hers was lost, extinguished or became merged into the property of the husband. The basal idea of the argument is, that the laws of Alabama have no extraterritorial force, and that rights and contracts arising thereunder will not be enforced here, except under the doctrine of the comity of States, and that this

doctrine neither requires nor sanctions the enforcement in the courts of this State, of statutory rights and contracts arising under the laws of a foreign State which are repugnant to the policy and spirit of our laws. This position is, we think, sound and well takn.

The rule is settled in numerous well considered cases, that when the *lex loci contractus* and the *lex fori* conflict, the comity of States will not avail. In *Potter* v. *Brown*, 5 East., 124, Lord Ellenborough says: "We always import, together with their persons, the existing relations of foreigners as between them-selves according to the laws of their own countries, ex-cept, indeed, when those laws clash with the rights of our own subjects here, and one or the other of the laws must necessarily give way, in which case our own is entitled to the preference. This having been long settled in principle, and laid up among our acknowledged rules of jurisprudence, it is needless to discuss it further."

It is also settled that where there is a well founded doubt as to whether the law of the *forum* or the *lex loci contractus* should prevail, the former will always be given the preference: Story on Confl. Laws, sec. 326: 2 Kent's Com., 461; *Ramsey* v. *Stevenson*, 12 Am. Dec., 468, and note, 470.

Out of this doctrine of comity, and the principles flowing from it, and directly analogous to them, are the rules in relation to real and personal statutes discussed by the civilians and found in some of our common law cases. This doctrine is succinctly stated in the leading case of *Saul* v. *His Creditors*, 5 Martin,

U. S., 569, reported in 16 Am. Dec., 212. It is there held that a real statute is one which regulates property within the State where it is in force, and that a personal statute is one which follows and governs the party subject to it wherever he goes. It is also held in this case that the real statute of the situation prevails over the personal statute of the domicil. But whether we consider the subject under the name of comity and its rules, or under that of real and personal statutes and its rules, either or both sustain the position that the *lex loci contractus* as to relations and property rights will prevail over the *lex fori*, unless the enforcement of the former will work an injury to the subjects of the latter, or is prohibited by the laws of the latter.

This being so, it is incumbent on the complainants to show that the rights and contracts with respect to her husband, acquired by Mrs. Walker in Alabama, by virtue of its laws, are repugnant to our laws or our policy in reference to the property relations of husband and wife, or that they, if enforced here, will work an injury to our citizens. This, in our opinion, they have not shown under the facts in these causes. The laws of Alabama, herein quoted, fixing the status of husband and wife with respect to her property and his obligations to her growing out of its use or conversion by him, do not conflict in the sense of repugnancy with our laws, or the public policy, spirit and genius of our general jurisprudence relating to married women and their property rights.

It may, indeed, be said, that the rights secured to wives under the Alabama statutes, can, for the most part, be secured to them by ante-nuptial contracts in the absence of intervening rights of creditors of husbands. And after marriage wives can here, by next friend, by appropriate application to our courts of equity, proceed against their husbands, and compel them, *in invitum,* to make proper settlements of their property on them, which shall be free from their control and from liability to their creditors.

It is true that the policy of our laws and the decisions of our courts do not favor secret liens and trusts. But the claim of the wife in this case is not predicated upon any lien, nor does she seek to enforce any trust, neither does she claim a debt by virtue of any lien or trust raised by the statutes of another State. She simply asserts that her husband owed her a debt by reason of his conversion of her statutory separate estate in the State of Alabama, and that being her debtor, he had the right to secure the payment of her debt by the conveyance sought to be annulled.

In this view our registration laws have no controlling force in the solution of the question in issue. If she were setting up a claim to this property as hers, by virtue of the laws of Alabama, or of some contract entered into in a foreign jurisdiction, the policy embodied in our registration acts would interpose an effectual bar to her as to creditors whose rights had attached. But even if her rights to the property rested upon an ante-nuptial contract, it would be

valid as between her and her husband, and its registration before the rights of creditors attached would protect her: *Cowan, McClung & Co.* v. *Mann*, 3 Lea, 229.

The decree of the chancellor below and the report of the Referees are correct. The exceptions to the latter are disallowed, and the report and the decree of the chancellor will be affirmed with costs.