## KING ET AL. *vs.* SEALS, Ex'R.

[BILL IN EQUITY TO FORECLOSE MORTGAGE.]

1. *Married woman, owning separate estate; right of to take mortgage to herself to secure debt due her; what power passes to executor of.*—A *feme sole* owning a statutory separate estate, after the death of her husband, was regularly appointed guardian of his minor children. She then contracted a second marriage; after this, and during her coverture with her second husband, she made settlement with a person indebted to her in her own right, or as guardian, and took his promissory note payable

to herself individually, for the amount of gross indebtedness thus ascertained, and the debtor gave her a mortgage on his lands, to secure this debt ; she then made her will, disposing of her statutory separate estate, and died.—*Held,* that, after her death, her executor might, by bill in equity, in his name as such, foreclose said mortgage, if said debt remained unpaid and the law day had passed.

2. *Married woman; for what purpose may take mortgage payable to herself during coverture.*—A married woman owning a statutory separate estate may, notwithstanding her coverture, take a note payable to herself for her own debt, and a mortgage to secure it to herself in her own name, She may do the same to secure a debt to her as guardian, when she would be liable for the debt to her as guardian if it should be lost.

3. *Same; bill to foreclose such mortgage, who necessary parties.*—In a suit in chancery to foreclose such a mortgage after her death, the only necessary parties would be her executor or administrator, and the mortgagor, if living.

4. *Same ; when final decree of foreclosure in such case, will not be disturbed.* The final decree of foreclosure in such a case will not be disturbed, on appeal, if all the necessary parties therein were before the court, notwithstanding the wards of such guardian are still living and within the jurisdiction, and not made parties to the suit for foreclosure.

5. *Chancellor, decree of, on evidence; when will not be reversed.*—When there is conflict in the testimony of witnesses on the trial before the chancellor, his decree will not be reversed on appeal, if it is supported by a preponderance of the evidence in its favor.

6. *Witness; when evidence of entitled to but little weight.*—In a chancery suit, the testimony of a witness, whose denials of facts which ought to be well known to him, and which are clearly proven by other witnesses, are based on his ignorance or failure to remember the facts about which he is testifying, is worthy of but little weight.

APPEAL from Chancery Court of Bullock.
Heard before Hon. B. B. McCRAW.

THE facts are sufficiently stated in the opinion.

CAREY, CUNNINGHAM & YOUNGBLOOD, and S. F. RICE, for appellant.
D. M. SEALS, and STONE, CLOPTON & CLANTON, *contra.*

PETERS, J.—This is a suit in equity for the foreclosure of a mortgage. The bill is in the usual form. The cause was submitted to the chancellor on the bill, exhibits, answer, demurrer, plea, and proofs. On the hearing, the chancellor overruled the demurrer, and decreed a foreclosure of the mortgage by sale unless the money due on the

promissory note secured in the mortgage was paid in the time specified in the decree. The defendant, King, in the circuit court below, appeals to this court, and here assigns the overruling of his demurrer and the decree of the chancellor as error.

The pleadings and proofs show that appellant, King, on January 16, 1861, owed Mrs. Abi Cash the sum of $4,650 72. There was some proof to show that part of this indebtedness was due Mrs. Cash as guardian of Nancy and Hilliard King. For this sum, he executed his note to her of that date, and to secure the payment of the same, he executed and delivered to her a mortgage of like date with the note and contemporaneously with it, on certain lands then claimed by him. This mortgage was duly executed and recorded, as required by law. These lands are not very carefully described in the mortgage ; but it appears that they were in section 22, in township 12, and range 25, in the county of Barbour, in this State, and contained in all five hundred and forty-one acres, " being the same by said Robert H. King (the maker of the mortgage) purchased at the sale of the real estate of Henry King's minor children, and made by said Abi Cash, (mortgagee) then Abi King, guardian of said minors." The note fell due on the first day of January, 1863. Mrs. Abi Cash had formerly been the wife of said Henry King ; and after said Henry King's death, and during her widowhood, she had been regularly appointed guardian of said deceased's minor children, had accepted the same, given bond, and acted as such. During her widowhood, Mrs. Cash, formerly King, owned and possessed some statutory separate estate ; but its value is not certainly shown. After the death of said Henry King, Mrs. Cash intermarried with Cash, and during her coverture with him the note and mortgage above said were made and delivered to her as abovesaid. Mrs. Cash died during her coverture with her last husband, Cash, and disposed of her separate estate by her will. Seals was appointed her executor ; he accepted the appointment, qualified, gave bond as such, and letters testamentary were regularly issued to him as required by law. It also seems that a part of the lands mortgaged as abovesaid were in the possession of on

Tandy King when they were so mortgaged, and that he claimed the same under color of title, and adversely to said mortgagor.

The demurrer objects to the bill for want of equity, for non-joinder of parties plaintiff or defendant, and because the lands are not described with sufficient accuracy to enable the chancellor to decree a sale. The parties omitted are alleged to be Nancy and Hilliard King, minor children of said Henry King, deceased, as complainants or defendants, and Tandy King as a defendant. There was also a sworn plea, denying the execution of the note and mortgage, and the indebtedness either to Mrs. Cash individually or as guardian, and alleging that the note and mortgage were made to her as a married woman, and that the note was without consideration. The answer flatly denies the indebtedness to Mrs. Cash in any way, and the executor of the note and mortgage as they now appear to have been made.

A married woman may become entitled to property in this State to the same extent that any other person may. *Goree v. Walthall*, January Term, 1870; Rev. Code, § 2371. Debts are property, under our law.—Rev. Code, § 2, cl. 3. Then, a married woman may have a debt owing to her as a part of her statutory separate estate, and she may secure the payment of the same by promissory note and mortgage. This power necessarily belongs to the right to own a debt. And at her death she may dispose of her property by will, and her executor succeeds to all her rights of property for the purpose of executing the trust. The debt passes to him upon the death of the wife and the probate of her will; and the mortgage is but a security for the debt, and passes with the debt.—Rev. Code, §§ 2378, 2347; *Center v. P. & E. Bank*, 2 Ala. 743; *Graham & Rodgers v. Newman*, 21 Ala. 497; 2 Lom. Exec. 2d Ed. 621. A married woman, during her widowhood, may be appointed a guardian if she is otherwise a suitable person. There is no restriction as to sex required by the statute.—Revised Code, §§ 2408, 2417. It is said in some of the States that even a married woman, during the life time of the husband, with his consent, may be appointed a guardian.—*Farrer v.*

*Clark,* 29 Miss. 195.   But it may be doubted whether such
an appointment would be proper in this State.— *Vide Wil-
kinson v. Cheatham,* January Term, 1871.   Mrs. Cash, then,
might have become the guardian of her husband, Hen-
ry's, children, after his death, and before her marriage
with Cash; this, the proofs show, was the case.   After
becoming such guardian, she might secure the debts due her
as such by note and mortgage, as was done in this instance.
In any aspect of the proofs, she was competent to receive
the note and mortgage mentioned in the bill, either for the
security of her own debt, or for her own debt and that of
her wards together, or that of the wards alone.   Whatever
moneys of the wards might have come into her possession
as her guardian, she would have to account for it, and she
would be entitled to the aid of such securities as she might
have taken to enforce its repayment to her.— *DeJarnette v.
DeJarnette,* 41 Ala. 708.   A married woman is bound to pay
her own debts, (Rev. Code, § 2370,) and unless she should
be thus permitted to secure those owing to her, she could
not meet her own obligations ; and the law would thus de-
feat the ability she might otherwise have to obey it.   But
the preponderance of the evidence in this case clearly shows
that the note and mortgage were executed by said Robert
H. King at the time they bear date, and that there was a
sufficient consideration to support the note and the mort-
gage.   The testimony of the witness, Robert H. King, is
subject to the vice of a profession of ignorance of the effect
of his own acts, when he ought not to have been ignorant,
or strangely forgetful of what he was about in so consider-
ble and deliberate a matter.   The rules of evidence in a
court of chancery deny to such testimony much weight.
In such a case, the preponderance of the evidence must
govern ; and this is clearly against the defendant, in the
court below.—Gress. Eq. 3; *Marler v. The State,* 2 Ala.
43, 47.

The demurrer was properly overruled.   The equity of
the bill, in any case, is beyond all question.   And the de-
scription of the lands was so certain that it could be made
certain ; and that is to be considered certain which can be
made so.—4 Kent, 462 ; 1 Bouv. Inst. 929 ; Broom's Max.

The wards of Mrs. Cash were not necessary parties to the bill, nor was Tandy King. They had no rights growing out of the contracts upon which the court was called to act that could be effected by the foreclosure, nor were they in any wise privy to the contract of the note or the mortgege. No judgment of the court below could have been made in their favor or against them. —Story Eq. Pl. 230.

My conclusion, therefore, is that, upon the pleadings and the proofs, the decree of the chancellor in the court below is correct. It must, therefore, be affirmed.

Let the appellant, said Robert H. King, and his sureties, pay the costs of the appeal in this court and in the court below.

NOTE BY THE REPORTER.—At a subsequent day of the term, the appellants applied for a rehearing, contending that if the decree of the chancery court was affirmed, the appellants would be liable to make *double satisfaction of the same debt;* that chancery will not leave suits of this kind open, but will end all the litigation in one suit, and hence the necessity of a reversal and making the *cestui que trust* parties. They cited, as to the option of the *cestui que trust* to follow the property or to hold the trustee personally liable, the case of *Oliver v. Piatt,* 3 How. 401; and, as to double satisfaction, *Miller v. McLane,* 10 Ala. 5ↄ6.

The response was delivered by—

PETERS, J.—The demurrer to the bill was withdrawn. This left the controversy between the mortgagee and the mortgagor. And I am unable to perceive that any such question as that argued by the eminent counsel for appellants is made by the pleadings, or established by the proofs.

The rehearing is denied, with costs.