## STONE & MATTHEWS *vs.* GAZZAM.

[ACTION FOR DAMAGES FOR NEGLECT OF REPAIRS OF STEAMBOAT, &C., BOUGHT
BY MARRIED WOMEN, WHO DERIVED TITLE TO THE BOAT BY PURCHASE FROM
THEIR HUSBANDS.]

1. *Separate estate of married woman ; of what consists.*—Under the laws
of this State, *all* the property of a married woman is her separate es-
tate, if it ⸴has accrued to her since the adoption of the Code of Ala-
bama.
2. *Same; what deed is not void, and can not be assailed by stranger.*—The
deed of a husband, made in this State since the adoption of the Code
of Alabama, to the wife, on a valuable consideration paid by her to
him, by which he conveys to her his interest in a steamboat and its
equipments in this State, if free from fraud, is not void. Such a deed,
if voidable, can only be avoided by the parties to it, or their creditors,
and not by a stranger.
3. *Same; possession of steamboat under such deed; what contract will
authorize wife to make, and sue on in her own name.*—The possession de-
rived from such a deed will authorize the wife to use the boat in the
business of transportation on the navigable waters of this State, and
to enter into a contract for the repairs of its machinery, and upon a
breach of a contract for such repairs, she may bring an action for dam-
ages on such contract in her own name as owner of the boat.

APPEAL from Circuit Court of Mobile.
Tried before Hon. C. W. RAPIER.

The facts are sufficiently stated in the opinion.

LYMAN GIBBONS, for appellant.—It is admitted that a
deed from the husband to the wife is void at common law.
But it is not so in equity. On the contrary, a conveyance
by the husband to the wife, whether by deed or by parol,
and whether by way of gift or voluntary settlement, and
whether supported by a consideration or not, where no
question arises as to creditors or subsequent purchasers,
and where the husband is affirming the gift, will always be
supported in equity.—Rosser on Husb. and Wife, vol. 1,
marg. p. 306–310 ; *ib.* vol. 2, 133–140 ; 2 Kent, 163 ; Story

Eq. § 1380 ; *Stanmug v. Styles*, 3 P. Will. 337 ; *Shepard v. Shepard*, 7 Johns. Ch. 57.

In all such cases, the wife at common law has an equitable estate, which will be supported only in equity. But it will be supported there.

2. Now the question arises, what effect has our statute on such estates, and on such deeds ?

The sections of the Code to which I refer are as follows : Sec. 2371.—" All property of the wife held by her previous to the marriage, or which she may become entitled to after marriage in any manner, is the separate estate of the wife, and is not subject to the payment of the debts of the husband." Sec. 2388.—" The provisions of this article take effect and are operative on the estates of all married women who have been married, or have received property by descent, gift, or *otherwise*, since the first day of March, 1848." Also, section 2383.—" The separate estate of a married woman, acquired subsequently to the first of March, 1848, from and after the time this Code goes into operation, is subject to all the rules, regulations and limitations contained in this article for the regulation of the separate estates of married women."

The court will observe the general and sweeping language employed in these sections as applied to the estates covered by them. Sec. 2371 says, "*all property* of the wife held by her previous to the marriage, or which she may become entitled to *in any manner*." This language covers equitable as well as legal estates, and every interest that can be imagined. Again, in section 2388 the terms are, by *descent, gift,* or *otherwise*. What can be broader than this? If the legislature had sought to employ language that should cover every sort of estate, they could not have done it more effectually.

Now, what is that which passes between the husband and wife by his deed or gift to her, where he is solvent and able to make the gift ? Agreed that by the common law the legal title did not pass, and yet something did pass, or else there would be nothing for equity to uphold. What is it, then, that does pass ? Simply an equitable estate,

which a court of equity seizes hold of and upholds. Now, this right, this equitable estate, this interest that passes by this deed to the wife, is property; it is worth something, and is something on which a court of equity seizes and decrees to the wife, and therefore is an estate. Can there be any doubt that it is embraced in the language of the sections above quoted? None in the world. Therefore, these statutes, acting upon these equitable estates, raise them to the dignity and effect of any other separate estate of the wife, and they give the wife on one of these estates the same status that she would have by the deed of a stranger.

What, then, is the conclusion to which we arrive in this particular case? 1st. If this deed is one falling within the case of *Stubbs v. Fisk*, in 30 Ala. 335, then the wife has a standing in court by herself. 2d. If the deed is one falling within the case of *Cannon v. Turner*, 32 Ala. 483, then the husband and wife must join in the suit.

P. HAMILTON, *contra*.—Such dealing between husband and wife as is shown in this case, is forbidden by the Code. Rev. Code, § 2374; *Reed v. Overall*, 39 Ala. 138.

Such suit must be brought in the name of the person having the legal title.—Rev. Code, § 2523.

At common law, such dealing would be illegal; a title can not pass from husband to wife.—1 Pars. Cont. 358-59; 8 Term Rep. 545; 14 Smedes & M. 59; 1 Greenl. R. 394; 10 Cush. R. 550; 8 Vt. 187.

The Code uses positive language: "Husband and wife *can not* contract with each other for the *sale of any property*." This language is declared to be prohibitory.—39 Ala. 144, *supra*. It is certainly universal in its terms, and for very good reasons. Its intention is in accordance with the spirit of the new system, to remove the wife as far as possible from the undue influence of the husband.

PETERS, J.—This is an action of *assumpsit*, with special counts, for damages arising from bad, unskillful and negligent repairs of a steamboat shaft, while the boat was

in the service of the plaintiffs in the court below, as joint owners of the same. The appellants in this court were the plaintiffs below, and there was a verdict and judgment against them, from which they appeal to this court.

The bill of exceptions shows that on the 18th day of May, 1866, Hessee, Otis, Cox, Brainard and Waring, all citizens of Mobile, Alabama, being the owners of the steamboat "Flirt," for and in consideration of the sum of $7,000 conveyed said steamboat and all its equipments to John P. Kennedy, J. H. Matthews & Co., J. M. Stone and B. W. Matthews, to be owned by them in shares as follows, to-wit: One-third by Kennedy, one-third by J. H. Matthews & Co., one-sixth by Stone, and one-sixth by B. W. Matthews. It further appears, that on the 26th day of May, 1866, said Kennedy being the owner of one-third, and said Matthews & Co. being the owners of one-third of said steamboat, for and in consideration of the sum of $4,667 paid to them by Mrs. Mary A. Matthews and J. M. Stone, conveyed said steamboat and its equipments, to the extent of the interests owned by them, to said Mrs. Matthews and said Stone. At the date of this last named conveyance, Mrs. Matthews was the wife of said J. H. Matthews, of the firm of J. H. Mathews & Co. It was further shown, that, on the 6th day of April, 1867, J. M. Stone, of Mobile, Alabama, being the owner of two-thirds of the steamboat "Flirt," abovesaid, for and in consideration of the sum of $3,333.33 paid to him by Mrs. Mollie J. Stone, conveyed to her all his interests in said steamboat and its equipments. It was also shown that at the date and execution of this conveyance Mrs. Stone was the wife of said J. M. Stone. All these transactions occurred in this State, and since the adoption of the Code of Alabama.

The action is prosecuted in the names of Mrs. Stone and Mrs. Matthews as sole complainants, who claim to be the joint owners of said steamboat, under the conveyances above said. There was some injury to the boat and their business in running said boat in this State shown, which was occasioned by the unskillful and negligent repairs

made by the defendants for plaintiffs, as alleged in the complaint.

On submitting the cause to the jury, on the trial below, the learned judge presiding, charged the jury in the following language, that is to say: "It appearing that Mollie J. Stone was the wife of J. M. Stone, and Mary A. Matthews was the wife of J. H. Matthews, (one of the firm of J. H. Matthews & Co.,) the deeds introduced by them and made by their respective husbands to them were not sufficient under the laws of Alabama to enable them to maintain this suit; that under the provisions of the Code in relation to the separate estate of married women, and under the common law, said plaintiffs had no title to the property which they could enforce in this court." To this charge the plaintiffs excepted, and now assign the same as error. Besides this, there are also two other assignments of error, but as they were not noticed at the bar or in the brief of the learned counsel, they will be treated as abandoned.—*Robinson v. Tipton*, 31 Ala. 595.

All persons of sound mind and sufficient age, in this State, who are otherwise able to make contracts, and where creditors have no prior liens, may sell or give their property to whom they please, when the person to whom the sale or gift may be made is not forbidden by law to receive it.—Benj. on Sales, p. 4. The fact that one is a husband does not curtail his capacity in this respect. It is true that at common law, neither the husband nor any one else could sell or give the property to his wife, so as to clothe her with a title that she could exert or defend in a court of common law; because under that system the wife's identity was merged in the husband.—2 Kent, 162; Co. Litt. 112; 1 Pars. on Cont. 345. But her identity was not so utterly destroyed by the marriage that she could not receive and hold, and own property for her own use, notwithstanding her coverture. It is very clear that she could, and that she might derive title to it from her husband during her coverture; though usually the conveyance was to a trustee for her use. In either case a court of equity would protect her rights in the property, what-

ever they might be.—2 Kent, 163 ; 2 Story Eq. §§ 1379, 1380. At common law a husband could not give or sell his property to his wife during coverture ; because this would be construed as a gift or a sale to himself, and nothing passed to the wife that a court of common law would recognize as property. Yet, the effort to sell or to give in this way was not a nullity ; unless it was in violation of the statute of frauds. There was a right to the property thus vested in the wife, which could be enforced and protected in a court of chancery. So stood the common law and equitable rights of the wife up to the time of the enactment of our statute, which changed the whole system.

There can be no doubt about the constitutional validity of this important enactment. The legislative authority of the State can emancipate the wife from all her disabilities as a *feme covert* at common law. Indeed, the general assembly may obliterate the whole system of the common law in the State, if the public policy require it. They may, therefore, change it and modify it in any way to suit the demands of State policy, if, in the change, they do not assail the obligation of contracts previously existing. In this view of the legislative authority, it has been the frequent and uniform practice in this State to pass laws to authorize married women, during coverture, to act and transact business as *feme sole* traders ; that is, in the language of these statutes, to make them "free-dealers." (Pamph. Acts 1859–60, p. 621 ; *Carleton & Co. v. Banks*, 7 Ala. 32 ; 669 *et passim*. In the exercise of this sovereign right the law of the Code, defining and regulating the estates of married women, was enacted. The language of this statute is very broad ; seemingly as broad as it can be made, without useless tautology. This declares that, *all property* of the wife, held by her previous to marriage, or which she may become entitled to after marriage, *in any manner*, is the separate estate of the wife, and is not subject to the payment of the debts of the husband."—(Rev. Code, § 2371). The wife's rights to her estate are not impeded by the inviolability of the contract of marriage. The legislative authority of the State is not forbidden to deal with

this contract as it may think best. Such contracts have no constitutional protection.—(*Dartmouth College v. Woodward*, 4 Whea. 518; Marshall, C. J., *arguendo*; *Holmes v. Lansing*, 3 John. Cas. 73; *White v. White*, 5 Barb. 474. *But see Holmes v. Holmes*, 4 Barb. 295; *Ponder v. Graham*, 4 Flor. 23). This statute overturns the old system, and makes the wife capable of owning property independent of the husband. In this respect, she is no longer the wife at common law. She is the wife under the law of Alabama. This law is thoroughly repugnant to the whole theory of the common law upon the subject of the wife's property; and it very properly provides a code of rules for the management of the estate held under it. It also seems that it is intended, that all estates which have accrued to married women in this State since its passage, must be affected by its provisions.—(Rev. Code, §§ 2382, 2388). For, evidently, aside from the force of these sections of the Code, every contract, whether of gift or sale, includes the law at the date of its execution, which governs its effect, as a part of its stipulations. Otherwise a contract might defeat the law.—(4 Wall. 535, 550; 8 Whea. 92; 1 How. 319; 12 Whea. 231; 9 Cr. 43; 9 Pet. 359). This important statute necessarily makes the wife capable of receiving and owning property, and does not limit her acquisitions to any particular sources. Her relation to her husband, in this respect, is changed. Before the statute, he could not give or convey to her, because this was but a gift or conveyance to himself. And it was ineffective for this reason, and not because such a gift or conveyance was illegal. This was not the case, if done in a proper way.—(2 Story Eq. §§ 1379, 1380, *et seq., and cases there cited*. Now the statute has removed the merger, and restored the wife to a capacity to receive and own estates as fully as though she were a *feme sole*. These deeds, then, conveying the steamboat "Flirt" by the husbands of the plaintiffs, as shown in the record, are not void. And were they even voidable, which is not admitted, they could only be avoided by the husbands themselves or by some person having rights under the husbands, who would be entitled to stand in their shoes.

This could not be done by these defendants. They are strangers to the deeds.—(10 Bouv. Bac. Abr. p. 382, F.) If the husbands permit these deeds to stand, no one else, save under some circumstances their creditors, have any right to complain. This action is founded on the agreement to repair the plaintiffs' steamboat shaft, made with them by the defendants, as the owners of the boat. Having contracted with the plaintiffs as owners, the mouths of the defendants are shut to deny this; as the married women do not repudiate this agreement, the defendants cannot do it. They were bound to perform their agreement in a proper way or to abide the consequences of a failure. The possession and use of the steamboat, under even an equitable claim, was sufficient to entitle the plaintiffs to repair, so as to make the use as beneficial as possible; and if the defendants agreed to make such repairs, they were bound to do so in a proper way; or they must answer in damages for a failure. If the agreement to make the repairs was legal, then the defendants must show that they had complied with its terms on their part. It is conceived that any legal possession of the boat would authorize the plaintiffs to make an engagement for its repairs. They might be entitled to the use by the mere permission of their husbands; and to deny them the right to repair, would defeat the purpose of this permission. Such an unreasonable contradiction is not to be presumed in the face of the deeds, which exhibit the most emphatic permission, if nothing more.—*McGrath v. Robinson*, 1 Desaus. 445.

I therefore think that the deeds relied on by the plaintiffs below, show a sufficient possession and property in them to support this action. Consequently, the charge of the court above was erroneous.

The judgment of the court below is reversed and the cause is remanded for a trial *de novo*.

[NOTE BY REPORTER.—At a subsequent day of the term, Mr. P. Hamilton, of counsel for appellee, filed an argument in support of an application for a rehearing. The argu-

ment did not come into the Reporter's hands. The following response was made by] :

PETERS, J.—The application for the rehearing in this case, is but a repetition of the case as heard upon the original submission. It is, then, but an application to the court to recede from the original determination of the cause. The points suggested by the learned counsel for the rehearing are of very great difficulty, but the constructions urged upon the court are not such as we are content to adopt in this case. Their answer must be looked for in the principles laid down in the opinion in the chief case. The rehearing is denied with costs.