[Barclay v. Plant.]

# Barclay v. Plant et al.

*Bill in Equity by Wife, against Purchasers at Execution Sale against Husband.*

1. *Conveyance of lands by husband to wife during coverture.* — If the husband is indebted to the wife as her guardian at the time of the marriage, he may lawfully convey his lands, or other property, to her during the coverture, in payment of such indebtedness.

2. *When wife may come into equity, to recover or protect statutory separate estate.* — A married woman, asserting title to lands, as a part of her statutory separate estate, under a valid conveyance from her husband during coverture, may maintain a suit in equity against a subsequent purchaser at execution sale against the husband, to whom the husband voluntarily surrendered the possession, to recover the possession of the lands, and to establish and quiet her title.

3. *Title of purchaser at sheriff's sale.* — To make out a title by purchase at sheriff's sale, the purchaser must show a valid judgment, an execution thereon, a levy and sale, and a sheriff's deed; and if his deed shows on its face that the sale was made under an execution issued on a judgment which was not valid, or which could not be enforced by execution, he cannot supplement his title, thus acquired, by showing that there was also in the sheriff's hands, at the time of the sale, an execution issued on a valid judgment.

4. *Judgments rendered during late war.* — Judgments rendered by the courts of this State during the late war, though not void, did not, prior to the passage of the act approved February 19, 1867 (Rev. Code, § 2877), create any lien on the property of the defendants therein, and could not be enforced by execution.

5. *Multifariousness.* — A bill is not multifarious, which is filed by the wife against her husband, and against several other persons, some of whom are in possession of lands which she claims, as a part of her statutory separate estate, under a conveyance from her husband during coverture, and which were bought at execution sale against him by the other defendants; and which seeks to recover the lands, to establish and quiet her title, and to appoint a trustee of the property for her.

6. *Possession of lands by husband and wife; rents and profits.* — When the husband conveys to the wife during coverture, by a valid deed, lands of which he is possessed in his own right, his deed passes his title to her, and his subsequent possession will be referred to her title; and his surrender of that possession, without her consent, to a subsequent purchaser at execution sale against himself, cannot defeat or affect her rights under his conveyance, except as to the rents and profits afterwards accruing, which will belong to such purchaser until the removal of the husband as trustee of the wife's estate.

APPEAL from the Chancery Court of Colbert.

Heard before the Hon. WILLIAM SKINNER.

The bill in this case was filed on the 23d December, 1869, by Mrs. Mildred A. Barclay, the wife of Dr. A. M. Barclay, who sued by her next friend, against her said husband, and also against Henry B. Plant, John A. Steele, Mrs. Julia A. Blocker, and Mrs. Nancy Beaumont; and sought to recover the possession of certain lands, which the complainant claimed under a deed from her said husband, as hereinafter more particularly stated, to establish and quiet her title to said lands, to make the defendants in possession account for the rents and profits which they had received, and to remove her said husband as trustee of her statutory separate estate. The complainant and her said husband were married in this State, in 1854; and at the time of the marriage, he was her guardian,

by regular appointment of the probate court having jurisdiction of her person and property, and was indebted to her, as such guardian, in a considerable amount.    On the 31st day of August, 1866, the said Barclay conveyed the lands in controversy to the complainant, by a deed which was duly acknowledged and recorded, and which recites, as its consideration, an indebtedness to her by him, "as trustee of her separate estate, in a sum exceeding one thousand dollars, the precise amount of which cannot now be ascertained in consequence of the loss of books and papers during the late war;" and the conveyance was declared to be "subject to all existing legal incumbrances." This is the title asserted by the complainant in her bill.

In September, 1861, two judgments were rendered against said A. M. Barclay, by the circuit court of Franklin county; one in favor of Julia A. Blocker and William Blocker, for about $2,600; and the other in favor of Nancy Beaumont, for about $125.    Executions on these judgments, which were regularly issued from term to term, were levied by the sheriff on the 13th day of May, 1867, on the land in controversy; and the lands were sold, under said levies, on the 1st day of July, 1867.    At this sale, Mrs. Julia A. Blocker became the purchaser, and received the sheriff's deed, which recited that the sale was made under the executions and levies above mentioned, and that the lands, at the time of the levy and sale, were in the possession of R. B. Lindsay, as the tenant of said A. M. Barclay.    There was also in the sheriff's hands, at the time of the sale, another execution against said Barclay, issued on a judgment for $389, in favor of one James Shuter, which was rendered by the circuit court of said county of Franklin, on the 26th day of March, 1866, in a suit commenced, by summons and complaint, on the 8th February, 1861.    In that case, there was an acknowledgment of service by said Barclay, and service on his co-defendant; and judgment was rendered against both by default, without any proof of the acknowledgment of service by Barclay.    Executions on this judgment were regularly issued from term to term, and returned "Stayed by suggestion under the statute;" and the execution, which was in the sheriff's hands at the time of the sale, was returned by him, "No property found."    This judgment was afterwards assigned by said Shuter to the defendant Plant, who, as the assignee, redeemed the lands from Mrs. Blocker, on the 26th March, 1868.    The defendant Barclay surrendered the possession of the lands to Mrs. Blocker, on her purchase at the sheriff's sale; and she continued in possession until they were redeemed from her by said Plant, who, by his tenant, the defendant Steele, was in possession when the bill was filed.    The defendant Barclay went into voluntary bankruptcy on the 20th February,

[Barclay v. Plant.]

1868, before the lands were redeemed by Plant from Mrs. Blocker. This is the title set up by the defendant Plant.

The bill alleged, that the judgments under which, as above stated, said Plant claimed and held the lands, were illegal and void, and that his deeds from Mrs. Blocker and the sheriff cast a cloud on her title. The prayer of the bill was, that said deeds might be cancelled; that the complainant's title to the lands might be declared, established, and quieted; that an account might be taken of the rents and profits received by Mrs. Blocker and Plant, for which they were accountable to complainant; also, for the appointment of a trustee for the complainant, if proper, to take control of the property conveyed by her husband's deed, a writ of possession, and general relief. An amended bill was afterwards filed, in which the complainant set up the proceedings had in the chancery court of Madison, under a bill filed by her against her said husband, in which she obtained a decree against him, in May, 1869, establishing her title under the deed to the property thereby conveyed.

Decrees pro confesso were taken against Steele and Mrs. Beaumont. An answer was filed by Mrs. Blocker, admitting all the material facts as above stated, but denying her liability for any rents and profits, and disclaiming all interest in the matters in controversy. Plant also filed an answer, denying all knowledge of the complainant's conveyance from her husband, and requiring proof of its execution and consideration. In regard to his own title, he asserted the validity of the judgments and executions under which Mrs. Blocker purchased the lands, and that their lien was superior to the complainant's deed; and he further alleged, that the execution on the Shuter judgment, which was in the sheriff's hands at the time of the sale, was in fact levied on the lands, and that the lands were sold under its levy as well as the other two executions. He also demurred to the bill, 1st, for want of equity; 2d, for multifariousness; and, 3d, because the complainant had an adequate remedy at law.

On final hearing, on pleadings and proof, the chancellor dismissed the bill, holding that "the proof is not sufficient to sustain the bill of complaint;" and his decree is now assigned as error.

J. B. MOORE, for appellant. — 1. The bill makes out a case for the interposition of equity. The complainant has no adequate remedy at law. Although she might sue Steele, Plant's tenant, she could not sue Plant, who is a non-resident, and could not make Steele bring in his landlord as a party; nor could she, except in a court of equity, get rid of the sheriff's deed to Mrs. Blocker, or Mrs. Blocker's deed to Plant, which

[Barclay *v.* Plant.]

are a cloud on her title.    The jurisdiction of equity in such a case is fully sustained by the following authorities : *Marston* v. *Rowe*, 39 Ala. 722 ; *Almony* v. *Hicks*, 3 Head's (Tenn.) R. 39 ; *Dahl* v. *Pross*, 6 Minn. 89 ; *Moran* v. *Palmer*, 13 Mich. 567 ; 1 Story's Equity, § 67 ; *Martin* v. *Hewitt*, 44 Ala. 426 ; *Munson* v. *Munson*, 28 Conn. 582 ; *Thompson* v. *Lynch*, 29 Cal. 189 ; 13 Illinois, 201.

2. It is not necessary that the complainant should have the possession, before she can come into equity for relief.    *Marston* v. *Rowe*, 39 Ala. 722 ; *S. C.* 43 Ala. 271 ; *Saltmarsh* v. *Smith*, 32 Ala. 404 ; *Shell* v. *Martin*, 19 Ark. 39 ; *Thompson* v. *Lynch*, 29 Cal. 189 ; *Johnson* v. *Cooper*, 2 Yerger, 524 ; *Maise* v. *Garner*, Mar. & Y. 383.

3. The execution of the complainant's deed from her husband is not denied, and its consideration is fully proved.    She was a large creditor of her husband, and was compelled to take such a deed as he would give.    Its *bona fides* is not assailed, and its validity cannot be successfully controverted.    *Stone & Matthews* v. *Gazzam*, 46 Ala. 274 ; *Ryan* v. *Bibb*, 46 Ala. 327 ; *Goree* v. *Walthall*, 44 Ala. 161 ; 30 Ala. 166.

4. Plant's title, as founded on his redemption from Mrs. Blocker, is a nullity.    There is no statute authorizing a redemption from a sale under a foreign judgment, such as this was.    Moreover, it is doubtful whether a creditor can redeem after the defendant's bankruptcy, since he no longer has a subsisting judgment.    *Pillow* v. *Langtree*, 5 Humph. 389.

5. The Blocker and Beaumont judgments were, at most, foreign judgments, and could not be enforced by execution. *Martin* v. *Hewitt*, 44 Ala. 560 ; *Noble & Brother* v. *Cullum*, 44 Ala. 581 ; *Bibb & Falkner* v. *Avery*, 45 Ala. 693 ; *Griffin* v. *Ryland*, 45 Ala. 690 ; *Mosely* v. *Tuthill*, 45 Ala. 621 ; *McSwean* v. *Faulks*, 46 Ala. 615 ; *Irvine* v. *Armstead*, 46 Ala. 373 ; *Foster* v. *Moody*, at January term, 1873 ; *Bevan* v. *Henry*, at same term.

6. The Shuter judgment was void, as there was no service of process on Barclay, and no proof of acknowledgment of service by him.    *Welch* v. *Walker*, 4 Porter, 120 ; 9 Wallace, 812 ; 45 Ala. 233.    Even if the judgment were valid, it cannot aid the defendant, because the sale was not made under this judgment, as the sheriff's deed to Mrs. Blocker shows on its face. Plant waived his rights under this execution, by failing to see to the application of the proceeds of sale.    *Campbell* v. *Spence*, 4 Ala. 452.

7. The sheriff's testimony, as to the levy of the Shuter execution, could not be received to contradict his return.

WATTS & TROY, with whom was T. E. WHITFIELD, *contra.*

[Barclay v. Plant.]

— 1. The facts stated in the bill, if true, show a legal title in the complainant, and possession of the lands by the respondent Plant; and there is no discovery asked, or lost instrument to be supplied. She has, then, a complete and adequate remedy at law, and chancery has no jurisdiction. 1 Story's Equity, §§ 76, 711; *Lyon* v. *Hunt*, 11 Ala. 295; *Burt* v. *Cassity*, 12 Ala. 734; *Martin* v. *Hewitt*, 44 Ala. 435; *Lining* v. *Geddes*, 1 McCord, 304; *Butler* v. *Ardis*, 2 McCord, 71; *McAfee* v. *Lynch*, 26 Miss. 257; *Shotwell* v. *Lawson*, 30 Miss. 27; *Hickman* v. *Cook*, 3 Humph. 642; 1 Bibb, 67; *Thayer* v. *Smith*, 9 Metcalf, 469; *Woodman* v. *Saltonstall*, 7 Cush. 181; *Pratt* v. *Pond*, 5 Allen, 59.

2. A party out of possession cannot maintain a suit in equity to remove a cloud on his title, until he has established his title at law. The cases to the contrary, in Tennessee and Mississippi, are founded on statutes. *Huntington* v. *Allen*, 44 Miss. 662.

3. The complainant must show a clear title, before he can maintain a bill to remove a cloud. *Banks* v. *Evans*, 10 Sm. & M. 35; *Toulmin* v. *Heidelburg*, 3 George, 268; *Kerr* v. *Freeman*, 4 George, 292.

4. If the instrument alleged to be a cloud is void on its face, the bill will not lie. 2 Story's Equity, §§ 700, 925; *Cox* v. *Clifton*, 2 Comstock, 115; 3 Myl. & Cr. 97; *Martin* v. *Hewitt*, 44 Ala. 435; *Posey* v. *Carraway*, 10 Ala. 813.

5. The Blocker and Beaumont judgments were not void, but stand on higher ground than foreign judgments. The earlier decisions of this court, placing them on the footing of foreign judgments, have been greatly modified by the later cases, beginning with *McGehee* v. *Lomax* and *Foster* v. *Moody*, both decided at January term, 1873.

6. Whatever may be the validity and effect of the Blocker and Beaumont judgments, or of the executions issued on them, Plant's title may be safely rested on the Shuter judgment and execution. That this judgment was valid, see *Boon & Booth* v. *Powell*, 43 Ala. 459. If the other executions were void, this execution had the prior lien; and the purchaser's title will be referred to the execution which, in law, had the prior lien, although it is not recited in the sheriff's deed. *McGehee* v. *Carraway*, at June term, 1872; *Ragland* v. *Cantrell*, at January term, 1873; 9 Bing. 566; 17 Johns. 116; 1 Hill, 560.

7. The Shuter judgment is not void, on account of the failure to prove the acknowledgment of service. It is only voidable and irregular, and reversible on appeal; but it cannot be held void in a collateral proceeding. *Hunt* v. *Ellison*, 32 Ala. 173; *Cole* v. *Connerly*, 16 Ala. 279; *Lightsey* v. *Harris*, 20 Ala. 410; *Cox* v. *Davis*, 17 Ala. 716; 4 Dana, 429; 1 Harr. 248;

[Barclay v. Plant.]

*Granger* v. *Clark*, 9 Shep. 128 ; *Vandyke* v..*Bastedo*, 3 Green, 224 ; *McElrath* v. *Butler*, 7 Ired. 398 ; *Douglass* v. *Massie*, 16 Ohio, 271 ; *Elsworth* v. *Larned*, 21 Vermont, 535 ; *Elliott* v. *Holbrook*, 33 Ala. 659 ; *Moore* v. *Horn & Bouldin*, 5 Ala. 234 ; *Woodward* v. *Cleg*, 8 Ala. 317 ; *Parker* v. *Parker*, 39 Ala. 307.

8. The complainant's deed from her husband recognizes the validity of these judgments, and is declared on its face to be subject to all existing legal incumbrances. But her deed is void on its face, because husband and wife are forbidden to contract with each other in reference to her separate estate. Rev. Code, §§ 2373–74. It is void for the additional reason, that it was fraudulent as against creditors. *Thornton* v. *Bledsoe*, 46 Ala. 76 ; *Curry* v. *Landers*, 35 Ala. 280 ; *Constantine* v. *Twelves*, 29 Ala. 607 ; *Reynolds* v. *Welch*, at January term, 1872.

9. The ordinance of the convention of 1867 relieves " war judgments " of all objections. *Randolph* v. *Baldwin*, 41 Ala. 305.

PETERS, C. J. — In the final decree of the court below, no notice is taken of the demurrers, though the cause was submitted on the demurrers, as well as on the merits. The suit was dismissed, because the proof was not " sufficient to sustain the bill." At the threshold, then, of the case as made in this court, two questions present themselves for solution, before any further progress in the inquiry involved need be made. One of these questions is this : Was the assignment, made by Barclay, on August 31, 1866, to his wife, Mrs. Mildred A. Barclay, of the lands in controversy, a valid assignment, so as to pass whatever title Barclay had to said lands at the date of the assignment, to his wife ? And the other question is : Does Mrs. Barclay's title to these lands, thus acquired, justify the interposition of a court of chancery for its protection, under the facts stated in her bill ? These questions are of primary importance in this suit, and they will be considered in the order above stated.

1. The assignment by Barclay to his wife was for the purpose of paying to her a sum of money, which he owed her as her guardian, before her marriage to him, while he remained such guardian. Very clearly, upon her marriage, she became entitled to have a final settlement of her guardianship, and to receive from her guardian whatever sum of money he might have of hers in his hands. Rev. Code, § 2422. The money or property thus in the guardian's hands constituted a part of the wife's statutory separate estate. Rev. Code, §§ 2371, 2382, 2388. Could the husband, then, during coverture, make a conveyance of lands to his wife, by written assignment, for the

[Barclay v. Plant.]

purpose of paying to her a debt, which he owed her at his marriage? The lands could not be conveyed without such assignment. Rev. Code, §§ 1534, 1535, 1536. Then, if the husband could pay his debt in this way, undoubtedly he could make such an assignment, unless the statute regulating the wife's estate forbids it. The great purpose of this statute, which is expressed in the titles of the earlier enactments on the subject, was the "securing" to the wife her property, as her separate estate, under the trusteeship of the husband. Acts of Ala. 1848, p. 79, No. 23; Acts of Ala. 1849–1850, p. 63, No. 23; *Wilkerson* v. *Cheatham*, 45 Ala. 337; *Cowles* v. *Marks*, 47 Ala. 612. This statute was not, then, intended to put impediments in the wife's way, in her endeavors to collect her debts, or to get possession of her property. The right to do this necessarily grows out of the ownership of property, and the duties which the wife is made liable to perform; that is, the duty to pay her own debts, and to provide for the support of her household, out of her separate estate. *Becton* v. *Selleck*, June term, 1872; *Scott's Adm'r* v. *Griggs*, January term, 1873; *King* v. *Seals*, 45 Ala. 415. This purpose, being general, and necessary for the performance of the liabilities imposed on the wife, and for the enjoyment of the rights intended to be conferred upon her, must include the husband, as well as others, when he owes the wife a debt, which he wishes to pay, or when he has her property in his hands, which he wishes to deliver to her. This is not, properly, the contracting between the husband and the wife, "for the sale of any property," which is forbidden by the statute. Rev. Code, § 2373; *Goree* v. *Walthall*, 44 Ala. 161; *Stone & Matthews* v. *Gazzam*, 46 Ala. 269; *Becton* v. *Selleck*, supra.

The conveyance of the lands named in the instrument executed by Barclay, to his wife, on August 31, 1866, under which she claims title, was a transaction not forbidden by law. The husband was bound to pay his debt to the wife, and could pay it in this way, and the wife could receive it. *Wise* v. *Norton*, June term, 1872; *Becton* v. *Selleck*, supra. Law is not intended to be the fountain of quibbles and snares, or of ingenious puerilities and doubts. It is a rule of right for the government of the citizen. It is never intended to be meaningless, or unjust. The legislative mind is always supposed to be guided by an intent and a just and reasonable purpose. This intent is the proper rule of the exposition of the law. It is the law. *Stewart* v. *Kahn*, 11 Wall. 493; *U. States* v. *Freeman*, 3 How. 563; *U. States* v. *Babbet*, 1 Black, 61. Besides, all the law must be taken together, as a system, and construed together as one harmonious whole; and it should not be regarded as a mesh of subtle antagonisms and contra-

dictions. No doubt, any one, owing a debt, may pay it to the creditor, who is competent to receive it. This payment may be made in any manner allowed by law. And it is equally true, that any creditor to whom a debt is owing and due, may receive it from the debtor, if paid as the law permits. Then, a married woman may do this, for marriage certainly does not degrade a woman below these great rights. Rev. Code, § 2525; *Wise* v. *Norton, supra; Becton* v. *Selleck, supra; Scott* v. *Griggs, supra; Stone & Matthews* v. *Gazzam, supra.* That a person may become the guardian of a female, and in that relation may become indebted to her, it would seem absurd to deny. · And it seems equally clear, that such guardian, whilst so indebted, might marry the ward, if there should be no other reason against the marriage, save such indebtedness. Such a marriage, since the passage of the " act securing to married women their separate estates, and for other purposes," approved March 1, 1848, does not discharge the husband from accounting as such guardian of the wife, or from the payment of any debt he owed her, on her marriage with him. The debt owing to the ward at her marriage was a part of her separate estate. Rev. Code, §§ 2371, 2382, 2388; Acts of Ala. 1848, p. 79, No. 23, § 1; Acts of Ala. 1849–1850, p. 63, No. 23, § 1; Code of Ala. p. 382, Art. IV. " *Provisions for the protection of* MARRIED WOMEN *and their* FAMILIES," and *cases supra.*

By these enactments last above cited. " ALL the wife's property is SECURED to her separate use." And in this sense, " property " means everything that can be owned. Rev. Code, § 2; Rutherforth Inst. of Nat. Law, p. 20; Jacob's Law Dict. *Property.* The wife is a property owner and a tax-payer, and her right to collect her debts is coextensive with that of the husband. If the wife should owe the husband before marriage, the marriage would not release the debt. It would be subject to be paid out of the separate estate. Rev. Code, § 2370. And in like manner, the husband would be bound to pay a similar debt to the wife. *Ryan* v. *Bibb,* 46 Ala. 323; *Jenkins* v. *McConico,* 26 Ala. 213. This power of the husband and the wife to pay their debts, and to reduce to possession what is owing to them, must necessarily carry with it all the incidents required to make it as perfect as possible. Under it, the wife may release or discharge a debt on its composition, and take, in lieu of it, some other property, especially with the husband's consent. Rev. Code, §§ 2685, 2686. *Wise* v. *Norton, supra; Becton* v. *Selleck, supra; Bliss* v. *Shwarts,* 64 Barb. Then, the assignment of August 31, 1866, was valid to convey to Mrs. Barclay such title as her husband then possessed in the lands mentioned in his deed.

[Barclay v. Plant.]

2. The second question above stated involves the inquiry as to the proper forum to which the wife may resort, in such a case as this, for the vindication and protection of her rights of property, when her title depends upon a transaction between the husband and herself. Before the Code of Alabama went into force, in 1853, the act of March 1, 1848, "securing to married women their separate estates," enacted that their property, thus intended to be secured, "shall be taken, esteemed, and held as trust property, and subject to and governed by all the rules of law now governing trust property." Act March 1, 1848, § 2, *supra*. This language, defining the character of the wife's estate, was also continued in the act of February 13, 1850, above cited. Act February 13, 1850, § 2, *supra*. No new remedies at law were provided by these acts, which abolished the remedies formerly existing. At the date of the Code of Alabama, the wife's remedy for the recovery and protection of her separate estate was in a court of equity. And it seems that the jurisdiction in equity was exclusive, when the husband's interest and those who claimed under him, was adverse to that of the wife. 2 Story's Eq. §§ 1327, 1366 *et seq.* Being also a trust estate, the remedies in chancery were likewise applicable. 2 Story's Eq. § 960 *et seq.* The Code of Alabama, and the Revised Code, simply digest the act of 1850, with some additions; but neither of these compilations takes away the chancery jurisdiction formerly existing. There is no repeal of the equitable remedies, but some new remedies at law are added. Rev. Code, § 2525. It is a familiar principle of jurisprudence, that the original jurisdiction of courts of equity is not impaired because courts of law are clothed with like jurisdiction, unless the statute conferring the new jurisdiction on the court of law abolishes the equitable jurisdiction before existing. The jurisdiction thus becomes concurrent, and a party may proceed in either forum. *Hall* v. *Hall*, 43 Ala. 488; *Childress* v. *Harrison*, 47 Ala. 536; 1 Brickell's Dig. p. 639, §§ 4, 7.

All the parties to this suit who claim any interest whatever in the lands in controversy, claim only Barclay's title. The title of the complainant in the court below is asserted under the assignment to her, purporting to have been executed by her husband on August 31, 1866; and the other parties, contesting her title, base their right on a sheriff's sale, and the liens of certain judgments, which, it is asserted, were older than this assignment, superior to, and override it and destroy its validity. The bill, and Plant's answer, show that he claims the lands in controversy as the assignee of the Shuter judgment, rendered in 1866, before the assignment to Mrs. Barclay, and under his deed from Mrs. Blocker, as a redeeming creditor

of Barclay. There was no sale under the levy on the *fieri facias* issued on the Shuter judgment. The sale was under the Blocker and the Beaumont judgments. This appears from the sheriff's deed to Mrs. Blocker, and from her deed to Plant. But the sale under these latter judgments was unsupported by a lien, and it was made some time after the assignment to Mrs. Barclay took effect. By the assignment, Barclay parted with all his title, and there was no property in him to the lands when these *fi. fas.* were issued, and the levy and the sale were made under them. Mrs. Blocker shows no right under the Shuter judgment. She, therefore, took no title under her sheriff's deed, which she could convey to Plant, unless her title was protected by a lien, which was older and superior to Mrs. Barclay's assignment.

3. If a lien older than the assignment is assumed to belong to the Shuter judgment, it will not help Plant's deed; because the deed shows that such lien, if it existed, was never executed by a sale and sheriff's deed. This latter judgment seems only to have been introduced to show Plant's right to redeem from Mrs. Blocker. If Mrs. Blocker aliened to him such title as she had, without objection, then his right to redeem, being an executed right, ceases to be of any consequence in this case, in the view I take of it. Its value was to compel her to convey to him, on his compliance with the terms of the statute. Rev. Code, § 2513. The right to redeem in Plant does not make good a title, which was before insufficient. This is the condition of Mrs. Blocker's deed as shown in the pleadings. It is essential, in order to pass a title by a sheriff's sale, that there should be a legal judgment, an execution thereon, a levy and sale, and a sheriff's deed. *Ware* v. *Bradford*, 2 Ala. 676; also, *Quinn* v. *Wiswall*, 7 Ala. 648; *Wheaton* v. *Sexton*, 4 Wheat. 503. It is true that the sheriff may sell under authority of any of the executions in his hands, and apply the funds made by the sale in payment of all the *fi. fas.* held by him, according to the priority of their liens. But the deed of the purchaser at the sale must show that it connects itself with a sufficient authority to give the sheriff power to make the sale. If the Shuter judgment, under which Plant redeemed from Mrs. Blocker, was entitled to a valid lien, older than the date of Mrs. Barclay's assignment, and the other judgments were not entitled to any liens, then the Shuter judgment was entitled to satisfaction out of the funds made by the sale, in preference to these other judgments. Rev. Code, §§ 2873, 2878, 2859. The levy of the execution issued on the Shuter judgment on property of the defendant in that judgment, and a sale of this property by the sheriff, while the execution thus levied was in his hands, was a satisfaction of that judgment, if funds sufficient were re-

alized by the sale to pay it, and that judgment was entitled by the superiority of its lien to prior payment. *Webb* v. *Bumpass*, 9 Port. 201; *Campbell* v. *Spence*, 4 Ala. 543. If the plaintiff in the Shuter judgment, in such a case, did not enforce the payment of his judgment, it was his own fault, for which none but himself should suffer.

4. But, were the judgments of the rebel courts, at the date of the accrual of Mrs. Barclay's title, clothed with any right of lien? · I think not. These were the decrees of a court of a government foreign and hostile to the constitution and government of the United States. They were the acts of one branch of an illegal government set up in this State after the overthrow of the legal state government. They have been uniformly treated as inconclusive adjudications by the general assembly of this State, and by this court, since the organization of the present state government, and also by the provisional government of this State. They have been held to need some kind of legislative recognition, or ratification, to give them validity. They have been suffered to be set aside and vacated, on motion, and new trials allowed to be granted long after the judgments were rendered. Rev. Code, p. 54; Ordinance No. 7, Ib.; Ordinance No. 26; Acts of Ala. 1866–1867, p. 107, No. 125; Ib. p. 568, No. 511; Acts of Ala. 1868, p. 186, Ordinance No. 39; Ib. p. 269, No. 48; *Hall* v. *Hall*, 43 Ala. 488; *Ray* v. *Thompson*, 43 Ala. 434; *Ex parte Bibb*, 44 Ala. 140; *Ex parte Norton & Shields*, 44 Ala. 177; *Moseley* v. *Tuthill*, 45 Ala. 621; *Bibb & Falkner* v. *Avery*, 45 Ala. 691; *Shaw* v. *Lindsay*, 46 Ala. 290; *McSwean* v. *Faulk*, 46 Ala. 610; *Irvin* v. *Armistead*, 48 Ala. 363; *Troy* v. *Ellerbee*, January term, 1872.

In *Coleman* v. *Holmes* (44 Ala. 124), this court say, "We know judicially, that at the time this note fell due (1861), and for more than four years afterwards, the courts of this State were in a position of hostility and revolt towards the United States and the federal constitution" (p. 124). And in the same case it is further said, in assigning a reason for the suspension of the statute of limitations from the 11th day of January, 1861, to the 21st day of September, 1865, that this was "the period within which no legal civil court existed, in which the people of the State were compellable to have their cases decided" (p. 128). And in the subsequent case of *Martin* v. *Hewitt* (44 Ala. 418), the lien of the judgments of the rebel courts was expressly denied. Without such lien, the title of Mrs. Barclay to the lands in controversy was not impaired by the sale made by the sheriff long after its inception. The assignment to Mrs. Barclay was before the adoption of the Revised Code, which was proclaimed on the 17th day of February, 1868. And the act legalizing this compilation was ap-

[Barclay v. Plant.]

proved on February 19, 1867. Acts of Ala. 1866–1867, p. 718, No. 662; see, also, same act in preface of Rev. Code.

The act of February 20, 1866, entitled "An act to regulate judicial proceedings," did not give judgments any liens, but only preserved such liens as might then be in force. Acts of Ala. 1865–1866, p. 83, No. 71, § 9. And the act of February 19, 1867, making all judgments liens on the property of defendants subject to levy and sale under legal process, was not passed until after the title of Mrs. Barclay had accrued. Acts of Ala. 1866–1867, p. 609, No. 552; Rev. Code, § 2877. None of these enactments affect Mrs. Barclay's title with the incumbrance of a lien; and beside these acts there is none other that can so affect it, unless it be section 2456 of the Code of Alabama, which was then in force. Admitting that the executions of *fieri facias* were regularly issued without the lapse of an entire term of the rebel court during the supremacy of the insurgent government, this could not give the illegal judgments any legal force they did not possess without it. The authority that issued these *fi. fas.* was illegal, and incompetent to confer any right of lien. They were issued from a rebel court, by a rebel clerk, and went into the hands of a rebel sheriff. It would be going quite too far, in my opinion, to give such acts the validity of regular proceedings, or to insist that the general assembly of this State, in 1852, intended, by the adoption of the Code of Alabama, to give validity to the liens of such judgments, or to the executions issued from the rebel courts. It follows, then, that the rebel judgments possessed no liens, until after the adoption of the act of February 20, 1867, above cited; and the sale of the sheriff to Mrs. Blocker is not supported by any such lien as could defeat a title that had accrued before the passage of that act. Her title, as against the appellant, is not good without it. Plant shows title only under her. She could convey to him only such title as she had. This, being an execution title, passed the right which the defendant Barclay owned at the date of the levy and sale, and no more. By such a sale, the purchaser acquires only the right and title of the defendant, and no more. *Lang's Heirs* v. *Waring*, 25 Ala. 625; *Doe, ex dem. Stevens* v. *King*, 21 Ala. 429; *Doe, ex dem. Cook & Hardy* v. *Webb*, 18 Ala. 810; 4 Ala. 156; 2 Port. 480.

There is no sufficient proof to show that Mrs. Barclay's claim against her husband was simulated, or fraudulent. Hers was an admitted debt, entitled to be paid. It was of as high a grade and as sacred as the judgments of the rebel courts, and as these judgments were not aided by any liens at the date of the assignment to her, they were not entitled to any priority over the assignment. This latter conveyance was an older title than that derived from the sale under the rebel judgments, and equally good, and must prevail over it.

5. Then, returning once more to the case made by the bill and the pleadings, the subject-matter of the suit is the title to the lands in question. All the parties to the suit are, or have been, more or less connected with this. The ownership of the land, then, is the question to be adjudicated. In order to quiet the title, and settle the claims of all these parties, they should be brought before the court. When this is the case, the bill is not multifarious. Story's Eq. Pl. §§ 271 *et seq.;* *Martin* v. *Hewitt, supra.*

6. It is a fair presumption from the facts stated in the bill and admitted in the answers, that at the time Barclay made the assignment to his wife, he was in possession of the lands thus assigned to her. This assignment was properly acknowledged on the day of its date, in lieu of the necessary attesting witness. This, then, makes the alienation sufficient, and vests the title in Mrs. Barclay, if there was no other legal impediment to defeat it; and it has been already shown that there was not any such impediment. Rev. Code, §§ 1536, 1535; *Becton* v. *Selleck, supra,* and cases above cited. In the absence of proof to the contrary, in such a case as this, this court will presume, in favor of the wife, who claims title from the husband, that his possession passed to the wife upon his alienation by proper conveyance to her. A deed by a party in possession, as owner, is equivalent to a livery of seizin, or possession. 4 Cruise, Greenlf. ed. 45; 3 Dall. Penn. 489; 4 Wheat. 213; 8 Cranch, 229; *Ford* v. *Bean,* June term, 1873; *McKenzie* v. *Baldridge,* June term, 1873. Under her title, then, Mrs. Barclay was vested with the possession of the lands mentioned in her assignment. The surrender of the husband's possession, after this assignment to the wife, to Mrs. Blocker, in conformity with the sheriff's sale, was illegal. The husband was entitled to the control of the lands of his wife's separate estate, as her trustee, and he would take the rents and profits arising from the same; but he could not dispossess her, without her consent, and in the manner prescribed by the Code. Rev. Code, §§ 2371, 2372, 2373. *Ravisies* v. *Warfield,* 38 Ala. 623. Mrs. Blocker's entry, as owner, was a trespass on Mrs. Barclay's possession; and Plant occupies no better condition than she did under his title from her. But Mrs. Barclay is entitled only to the possession of the lands as owner in her own right. The rents and profits belong to the husband, until he is removed as her trustee; but these rents and profits cannot be taken to pay his debts. Rev. Code, § 2372; *Patterson* v. *Flanagan,* 37 Ala. 513. There is no doubt, that before the possession of the wife's lands was delivered by the husband to Mrs. Blocker under her sheriff's deed, a court of chancery would have interfered to protect her possession from invasion

under the sheriff's deed. *Martin* v. *Hewitt*, *supra*, and cases there cited. The husband, by his illegal act, could not deprive her of this equitable right. The wife was the true owner in possession, and the claimant under the sheriff's deed is a mere trespasser, except as to the rents and profits. The yielding of the possession by the husband cannot have a greater effect than an abandonment of his right to control the lands and the rents and profits. Such abandonment of control by the husband was also an abandonment of the rents and profits to the sheriff's purchaser. The rents and profits being under his control, and no part of the wife's estate, without release or assignment to her, he could pass these to Mrs. Blocker, if he chose. *Lyles* v. *Clements*, June term, 1873. Mrs. Blocker, or her assignee, would, then, be entitled to take the rents and profits, in like manner as the husband would be, until his removal as the trustee of the wife's estate. Plant's title is simply Mrs. Blocker's title, and must share a like fate. Both are inferior to Mrs. Barclay's, as presented in this suit, and they must yield to it.

In this view of our law "for the regulation of the separate estate of married women," I think that the proofs were sufficient to sustain the complainant's bill in the court below. The learned chancellor, therefore, erred in dismissing the bill; and for this error, his decree must be reversed.

The judgment and decree of the court below is reversed, and the cause is remanded for further proceedings in conformity with the law, as declared in this opinion. The appellee, Plant, will pay the costs of this appeal in this court, and in the court below.

BRICKELL, J., having been of counsel in the court below, did not sit.